A. LEE CADY, ADMR. *v.* MARY E. LANG.

May Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES and SLACK, JJ.

Opinion filed October 4, 1921.

*Immaterial Whether Juror in Accident Case Is Policy Holder in Liability Insurance Company—Objection to Entire Question Good in Part—Cross-examination of Attorney to Show Interest—Improper Argument—Judge of County Court Cannot Act As Attorney for Another in His Court—Prejudicial Error to Allow Judge to Appear as Counsel.*

1. Whether a juror in an automobile accident case is a policy holder in any company insuring automobile owners or drivers against individual responsibility is not a proper subject of examination on the *voir dire* examination, being immaterial.

2. It is not error to allow a question covering admissible and inadmissible matter where the objection is to the entire question.

3. Where one of defendant's attorneys testified in defence, it was proper, as showing his interest, to ask him on cross-examination if he represented a liability insurance company interested in the outcome of the case.

4. Stating in argument that such witness was the attorney for an "insurance concern" which issued a policy protecting the defendant from her own negligence, when there was no evidence as to the policy or its provisions, was reversible error.

5. Statutes should be construed, if possible, so as to make them consistent with the Constitution and the paramount law.

6. Where the meaning of a statute is doubtful, the consequences may be considered in its construction; and a construction that leads to absurd consequences must always be avoided.

7. G. L. 1482, by implication, prohibits a judge of the county court from accepting a retainer or acting as an attorney or counsel in bringing or managing in such court any suit in which he has no personal interest, during his term of office.

8. For a judge of the county court to leave the bench and appear as an attorney or counsel in a cause of another on trial by jury in his own court is error prejudicial to the other party.

ACTION OF TORT for negligence causing an automobile accident resulting in the death of plaintiff's intestate. Plea, the general issue. Trial by jury at the December Term, 1920, Windsor County, *Butler*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*S. Hollister Jackson* and *Erwin M. Harvey* for the defendant.

*Charles Batchelder* for the plaintiff.

WATSON, C. J.    This action is based on alleged negligence by the defendant in running her automobile on June 1, 1919, resulting in the death of the plaintiff's intestate.

[1, 2]   In examining the jurors on the *voir dire*, plaintiff's attorney inquired whether any of them were policy holders in or members or stockholders of any insurance company that engages in the business of insuring the owners or drivers of auto-

mobiles against individual responsibility. Exception was taken "to both the question and its being permitted to be answered." It is not perceptible how the mere fact that a juror was or was not a policy holder in a stock insurance company engaged in the business mentioned, could in any view of the matter be a proper subject of such examination. As well might the jurors be examined in a case based on a policy against loss by fire, whether any of them hold a policy in *any* stock company which insures property against loss by fire. This is getting too much into the realm of immateriality. However, the objection being to the entire question, we cannot say the ruling was erroneous.

[3, 4]   E. M. Harvey, one of the attorneys trying the case in defence, was called as a witness by defendant. In cross-examination the plaintiff was permitted, subject to exception, to ask whom the witness represented in the case, and whether he represented "a liability insurance company interested in the outcome of this litigation." The witness answered, stating his understanding to be that he represented Mrs. Lang, and he appeared as her attorney; but his information was, through his associate attorney in charge of the case, that his employment was authorized by an insurance company, giving the name of the company. Under the holding in *Raymond's Admx.* v. *Rutland Ry. Light & Power Co.*, 90 Vt. 373, 98 Atl. 909, such examination was proper as showing the interest of the witness. But in arguing the case to the jury plaintiff's attorney was not content with urging such interest as affecting the weight to be given to the testimony of the witness. He stated that the witness was "the attorney for an insurance concern which issued a policy protecting her (defendant) from the result of her own negligence." Objection was made on the ground that this was unwarranted by the evidence, and exception was saved. No retraction was made. This exception was well taken. The record shows no evidence as to the policy or its provisions, and the making of such statement to the jury constitutes reversible error.

Before and at the time of the accident in question, Edward H. Edgerton, an attorney at law residing in the town of Rochester, the town of the intestate's residence, was and ever since has been one of the assistant judges of Windsor county court in which this suit was brought. Yet, nevertheless, he became and was one of plaintiff's attorneys in the bringing of the suit, and

his name, with that of associate counsel, was so indorsed on the writ.

On the opening day of the term of that court, December 7, 1920, Judge Edgerton was present in court and acting in his judicial capacity. The trial of this case was commenced on the coming in of the court the next morning, and continued for three days when a recess was taken. The trial was resumed on the 15th of the month, closing on the 16th.

Judge Edgerton did not sit on the bench nor act with the other judges during the trial, but when in court he, on the contrary, occupied a seat within the bar apart from the counsel actively engaged in the trial. He did not consult with counsel in court during the trial, nor appear with them before the court at any stage of the proceedings, except as stated below. It was conceded, however, that, when out of the presence of the jury, during the daytime, and while the court was in recess, he consulted with other counsel for the plaintiff regarding the conduct and management of the case. And in the course of the introduction of evidence by the defendant, and while a witness called by her was under cross-examination, Judge Edgerton arose from his seat within the bar, crossed the room to the table in use by counsel for the plaintiff, and, in the presence of the jury, handed to one of his associate attorneys a slip of paper, and immediately resumed his seat. This paper contained, in the handwriting of Judge Edgerton, a suggestion concerning the cross-examination of the witness. Immediately following this incident, defendant's attorneys applied to the court to discharge the jury, claiming that, in order to maintain the sanctity of our courts, it should be held in the circumstances to be a mistrial; that counsel for defendant had just realized the situation by asking Judge Edgerton why he was not sitting on the bench, and being informed by him that he had helped in the preparation of the case, and (as counsel for defendant believe) he is now in court apparently helping in the conduct of the trial; that this is contrary to public policy, and contrary to our system of running courts; that because of these facts a situation is presented which is prejudicial to the defendant, and the trial should be stopped. The court ruled as matter of law that Judge Edgerton can act as counsel in a cause in which he is counsel of record, that the parties are in no way hurt by the procedure, and that the trial proceed. To this ruling exception was saved. The question thus

presented is one involving most serious consequences, and, so far
as we are aware, is now before the Court for the first time in the
history of the State.   Simplified it is: Can a judge of the county
court, a court of general, and in some instances of appellate,
jurisdiction, during his term of office, lawfully accept a retainer
as an attorney to bring a suit for another person in the court of
which he is a member, in which suit he has no individual interest
and to hear which as part of the court he is not otherwise dis-
qualified, and there engage in the trial or management of the
case under such retainer?

"Every person within this State," says the Constitution,
Ch. I., Art. 4, "ought to find a certain remedy, by having re-
course to the laws, for all injuries or wrongs which he may re-
ceive in his person, property or character; he ought to obtain
right and justice, freely, and without being obliged to purchase
it; completely and without any denial; promptly and without .
delay; conformably to the laws." Again, Ch. II., Sec. 4: "Courts
of Justice shall be maintained in every county in this State
* * *" Section 28: "The Courts of Justice shall be open for the
trial of all causes proper for their cognizance; and justice shall
be therein impartially administered, without corruption, or un-
necessary delay * * *; and the several judges of the County
Courts, in their respective counties (shall be Justices of the
Peace) by virtue of their office, except in the trial of such causes
as may be appealed to the County Court."

That the constitutional rights thus declared might be fully
realized as intended, statutes were early enacted, containing rules
and inhibitions, some fundamental in character, to be observed
in the administration of justice: By G. L. 1482 (first enacted in
its principal features as to judges more than one and a quarter
century ago), "A justice of the Supreme Court, chancellor,
judge, justice of the peace, master in chancery, juror or other
person shall not act in a judicial capacity in or as trier of a cause
or matter in which he has been retained or acted as an attorney
or counsel, or is interested in the event of such cause or matter,
* * * nor shall he be permitted to appear as attorney or counsel
in a cause in which he has acted in such capacity or as trier
* * *."

[5]   These statutory provisions should be construed so as,
if possible, to make them consistent with the Constitution and the
paramount law. *Presser* v. *People of Illinois,* 116 U. S. 252, 29

L. ed. 615, 6 Sup. Ct. 580; *In re Barre Water Co.*, 62 Vt. 27, 20 Atl. 109, 9 L. R. A. 195. Observing this rule of construction, the fact that a judge is, by statute, expressly inhibited from acting as such in or as trier of a cause or matter in which he has been retained or acted as an attorney or counsel, does not by any means suppose that he may, during his official term, lawfully accept a retainer or act as an attorney or counsel in bringing suits in the court of which he is a member, and in managing the same when there on trial; for the Constitution, in plain words, makes it a prerequisite to the exercise of judicial power, that every judge shall take and subscribe the prescribed oath or affirmation of office, wherein he solemnly promises that he "will faithfully execute the office * * * and will therein do equal right and justice to all men to the best of" his judgment and ability, according to law. And, having accepted the office, and having qualified as pointed out in the Constitution, the public have the right to understand that, while he remains in such judicial position, he will (if health permits) discharge, with official fidelity, the duties of the office. *Dougherty* v. *Austin*, 93 Cal. 601, 28 Pac. 834, 29 Pac. 1092, 16 L. R. A. 161; 22 R. C. L. 462, § 126.

[6] The inhibition noticed above, as given in the statute, though broad enough to cover all instances of the nature mentioned, has reference more particularly to causes in which such judge was retained or acted as an attorney or counsel prior to his appointment or election to the bench, as to which disqualifications always follow; yet what real purpose does a judge serve in the administration of justice if, at the same time, he may lawfully, during his official term, accept employment and act as an attorney or counsel in matters to be brought before the court, or pending therein? Matters of such subsequent employment may consume the major part of his time, leaving little to be devoted to the functions of his judicial office. If doubt exists as to the meaning of a statute, the consequences may be considered in its construction. *In re Sammon*, 79 Vt. 521, 65 Atl. 577. Let us look at the consequences a little farther. The rights, duties, and privileges, appertaining to the functions of an attorney or counselor, are so inconsistent with the duties, powers, discretions, and privileges, appertaining to the functions of a judge of a court of general jurisdiction, as to render it reasonably certain that the law does not contemplate that the same person shall be actively occupying the two positions at the same time, even in

different matters. And if one of the judges can lawfully occupy the position of the former, thereby disqualifying himself from acting in the position of the latter, why may not all the judges of the court, in a similar manner, individually disqualify themselves from acting judicially in the same case or cases? This is a possibility if the ruling made in the court below is sound in law; and if a change of venue be obtained ·in consequence thereof, what is to prevent a like disqualification of judges being had in the county to which such cause or causes are removed, and so on *ad infinitum* throughout the counties of the State, if that number of changes be permissible in law? Furthermore, if this or· a similar course is in law open to the judges of the county courts, so it is to the justices of the Supreme Court, for the statute in the respect named is the same as to both.

A construction of the statute permitting such a course of conduct on the part of the members of the courts named, renders the statute ineffective, inefficient, and absurd, and the consequences are likely to be such as are well calculated to cause grave public injury. But a construction that leads to absurd consequences must always be avoided. *In re Howard's Estate,* 80 Vt. 489, 68 Atl. 513; *Morse* v. *Tracy,* 91 Vt. 476, 100 Atl. 923. And a presumption obtains against a construction that would render a statute ineffective or inefficient, or which would cause grave public injury or even inconvenience. *Bird* v. *United States,* 187 U. S. 118, 47 L. ed. 100, 23 Sup. Ct. 42.

[7] We think the statute under consideration, by implication, also prohibits a judge of the county court from accepting a retainer or acting as an attorney or counsel in bringing or managing any suit in which he has no personal interest, during his judicial term of office, as necessary in order to make the statute effective in serving the purpose for which it was intended. *Yatter* v. *Smilie,* 72 Vt. 349, 47 Atl. 1070; *In re Demarco,* 77 Vt. 445, 61 Atl. 36. If this be not so, and a state of circumstances, similar to that suggested above as consequent on such acts of voluntary disqualification, can lawfully exist in connection with the operation of our judiciary system, where, in the eyes of the public, are to be found the purity, the integrity, and the impartiality of the courts, contemplated by the Constitution which have ever been averred by the people of the State, and which must be maintained or the honor of the courts will soon be prostrate?

When reviewing a ruling so far-reaching in its evil consequences to one of the great institutions of government, we are impressed anew with the wisdom of our forefathers in writing for the guidance of ages to come, the admonition contained in Article 18 of the Declaration of Rights, "That frequent recurrence to fundamental principles, and a firm adherence to justice, moderation, temperance, industry, and frugality, are absolutely necessary to preserve the blessings of liberty, and keep government free; * * * "

In addition, acts by a judge in violation of the prohibitive provisions expressly or impliedly contained in G. L. 1482, are against public policy, which has sometimes been defined as "that principle of law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Wakefield* v. *Van Tassell*, 202 Ill. 41, 66 N. E. 830, 95 A. S. R. 207, 65 L. R. A. 511; *Consumers' Oil Co.* v. *Nunnemaker*, 142 Ind. 560, 41 N. E. 1048, 51 A. S. R. 193; *Brooks* v. *Cooper*, 50 N. J. Eq. 761, 26 Atl. 978, 35 A. S. R. 793, 21 L. R. A. 617. And this Court has stated as a general rule of law, "that whatever tends to injustice or oppression, restraint of liberty, and natural or legal right, or to the obstruction of justice, or to the violation of a statute, and whatever is against good morals, when made the subject of a contract, is against public policy and void." *Tarbell, Admr.* v. *Rutland R. R. Co.*, 73 Vt. 347, 51 Atl. 6, 56 L. R. A. 656, 87 A. S. R. 734.

[8] Counsel for plaintiff urges that, in addition to establishing that Judge Edgerton's conduct was improper and calculated to impair the confidence of the public in the courts, the defendant has the burden of showing that such conduct tended to deprive him of a fair trial. Assuming this burden to be with the defendant, we think he has sustained it. Every man is entitled by law not only to a fair trial of his case, but to one as free as may be from suspicion of partiality or undue influence; and no argument should be necessary to convince one that when a judge leaves the bench and appears as an attorney or counsel in a cause on trial by jury in his own court, the minds of the jurors, who are accustomed to receive and obey instructions from the court, have by reason thereof been unduly influenced and an impartial trial not had. See *Bashford* v. *People*, 24 Mich. 244; *Wright* v. *Boon*, 2 G. Greene, 458; *Lilly* v. *State*, 7 Okla. Crim.

.284, 123 Pac. 575, Ann. Cas. 1914 B, 443; *Wood* v. *Keith,* 60 Ark. 425, 30 S. W. 756.

We therefore hold that the ruling in question was unsound in law and constitutes reversible error.

The foregoing question has received our most careful consideration, not wholly because of the case itself, nor because of the manner in which the illegal acts in court were performed—the acts of Judge Edgerton in that connection, if proper, could hardly have been more dignified or less objectionable—but because required for the reasonable protection of public and private rights, the great object for which courts with their judges and officers are established and maintained.

Some other questions were presented in argument, but they are not likely to arise on another trial of the case, and so are not considered.

*Judgment reversed and cause remanded.*