E. J. RYAN, Appellee, v. CAMIEL SIMEONS, Appellant.

No. 40101.

MARCH 11, 1930.

*John E. Stapleton* (*R. S. Milner* on the brief), for appellant.

*Wallace & Claypool* and *E. J. Sullivan,* for appellee.

GRIMM, J.—In August, 1928, the plaintiff, Ryan, brought a suit in the district court of Iowa County against Camiel Simeons

and Andrew Simeons, his minor son. It is alleged that, on or about the 29th day of March, 1928, a collision occurred at the intersection of Marengo Avenue, running north and south, and South Street, running east and west, in the city of Marengo, between a Chevrolet coupé, being driven by said Andrew Simeons, south on Marengo Avenue, and a Ford touring car, being driven westerly along South Street by Louis Ryan, the minor son of the plaintiff, E. J. Ryan. At the time of the collision, Louis Ryan, then about 16 years of age, was driving the Ford car. Sitting in the front seat with him was one William Edwards. In the back seat of the Ford touring car was the plaintiff, E. J. Ryan. Ryan had with him in the rear part of the Ford touring car a calf, which had been procured at a neighbor's and was being taken home by the Ryans.

It appears that the collision occurred near the west side of the intersection, and that the Chevrolet, being driven from the north, struck the rear right wheel of the Ford. The plaintiff, E. J. Ryan, was severely injured. During the progress of the trial, and after testimony concerning statements made by him was introduced, the case as against Andrew Simeons was dismissed. The jury returned a verdict against the defendant Camiel Simeons for $5,000 and costs, and judgment was entered accordingly.

I. One of the main grounds urged by the appellant for reversal has to do with the conduct of plaintiff's attorneys during the trial of the case. It is claimed that a persistent effort was made to convince the jury that the defendant was protected by insurance as against any judgment which might be procured against him in the cause.

While the jury was being impaneled, plaintiff's attorney asked each and every juror two questions, in substantially the same language, as follows:

1. "Are you interested as a stockholder or otherwise in any insurance company which writes insurance for people insuring them against liability for damages for the negligent operation of automobiles?"

2. "Are any of the members of your family engaged in writing insurance for people, for any company insuring against liability for damages in the operation of an automobile?"

The language was not always the same, but the questions in substance were identical. To these questions prompt and suitable objections were made. The jurors of whom the questions were asked were engaged in various lines of occupation, as follows: Eight of the jurors were then living on farms, and had been engaged in farming all their lives. Three of the jurors were housewives; one of them retired; one was the wife of a common laborer. One of the jurors had been a farmer, but at the time of the trial he was a janitor.

The questions were all uniformly answered in the negative. In addition to timely objections to each of these questions when made, defendant's attorney moved to discharge the jury as drawn, and as grounds, complained of the questions which had been propounded pertaining to insurance, and the manner in which the question of insurance had been paraded before the jury. These motions were overruled.

During the progress of the trial, one Dwyer, the city marshal, was called on behalf of the plaintiff. He testified that, on the afternoon of the day of the accident, he found the boy Andrew Simeons, and took him down to the sheriff's office; that he heard him talking in the sheriff's office. He was then asked this question:

"Q. What did he say in your presence about how the collision occurred, and what took place? A. He said he never seen the man until he hit him. I said, 'You were driving fast, weren't you?' 'No,' he said. He said, 'I wasn't going over 30 miles an hour, or 35,' he said, 'I don't care,' he said, 'I have insurance.' "

Counsel for the defendant then objected, as follows:

"We object to that statement that 'I don't care, I have insurance,' as a prejudicial statement, injected into this record for prejudicial purposes; and I now move that this case be continued, and this jury be discharged.

"The Court: If that is all one motion, it is overruled. Exception."

Defendant's counsel, Mr. Stapleton, then said:

"I now move that the statement in this record 'that he didn't care, that he had insurance,' be stricken out of the record;

that this jury be discharged, and that this case continued, for the reason that the same is injected into this record for prejudicial purposes.

"The Court: Overruled. Exception."

One Cafferty, sheriff of Iowa County, was presented as a witness on behalf of the plaintiff. He was asked about the same conversation concerning which Dwyer, the city marshal, testified. On direct examination, he testified that he had heard young Simeons make statements in the sheriff's office regarding the collision, in which conversation he described the direction in which he was going and the rate of speed at which he was driving. After cross-examination, plaintiff's counsel asked this question, on redirect examination: "What, if anything further, did he say in your hearing than what you told me in direct examination about that car and about that collision?" To this question an objection was made, and it was overruled. The answer was, "He said he carried insurance,—said the car carried insurance." To this, defendant's attorney moved to strike the answer, as being prejudicial, which motion was overruled. The motion also charged that the plaintiff's attorney was injecting prejudicial error into the record. Later in the trial, the following record was made:

"9:45 A.M., January 9, 1929, jury called into court.

"By the Court: At this time, before we proceed further, I wish to make the following rulings: In the testimony of Daniel Dwyer, the question was asked 'What did he' (that is, Andrew Simeons) 'say in your presence about how the collision occurred and what took place?' The answer was, 'He said he never seen the man until he hit him. I said, "You were driving fast, were you?" "No," he said, "I wasn't going over 30 miles an hour, or 35." He said, "I don't care," he said, "I have insurance." ' There was a motion made to strike out ' "I don't care," he said, "I have insurance." ' That motion will be sustained, to the extent that the expression 'I have insurance' will be stricken out, and the jury is instructed not to consider that part of the answer in any manner in arriving at your verdict."

At the close of plaintiff's testimony, after the plaintiff rested, the attorney for the defendant moved the court to discharge the jury and to continue the cause, on many grounds:

among others, the alleged misconduct of counsel by injecting into the cause the question of insurance, including the examination of the jurors and the testimony in reference to the statement of the boy Simeons in reference to carrying insurance. This motion was presented in the absence of the jury; and at the same time, plaintiff's counsel asked to have the defendant's attorney sworn, and a record made of his evidence, which was done. Plaintiff's attorney thereupon proceeded to ask defendant's attorney, among other questions, the following: "Who are you looking to for your pay?" An objection to this question was sustained.

Plaintiff's attorney, in asking to have this testimony taken, said:

"Let the record show that the plaintiff at this time asks the court, in the absence of the jury, to swear John E. Stapleton, counsel for the defendant, for the purpose of showing in the record that he is representing an insurance company that is supposed to have the risk of the Chevrolet car insured, in the defense of this case."

After the motion was sustained, plaintiff's attorney made a proffer of evidence, stating that, if the witness should be permitted to testify, he would say that he is an attorney for an insurance company, the Great Western Casualty Company, of Fort Scott, Kansas, in the case on trial.

The defendant, Camiel Simeons, was a witness on behalf of the defense, and while he was on the stand, plaintiff's attorney asked him this question: "What arrangements do you have as to paying your attorney in this case?" To this question objection was sustained. Then followed the following question: "Isn't it a fact that you are not to pay your attorney any money yourself?" To this question an objection was sustained, following which, plaintiff's attorney said: "Let the record show that we proffer and show that the witness will state" (following which there was an objection, as follows):

"Defendant's counsel objects to plaintiff's counsel at this time, in the presence of the jury and in the trial of this case, offering or proffering any answer—

"The Court: The court will say that he is not doing it so

that the jury can see, or anyone else, except the reporter, if he has,—I do not know what he is doing."

Plaintiff's attorney continued, saying:

"Let the record show that the plaintiff proffers the answer of witness, and shows that the answer, if the witness is permitted to answer, would be that he is not to pay John E. Stapleton, the attorney, any sum whatsoever for defending him in this lawsuit, and that the attorney John E. Stapleton is being paid by an insurance company, which stands the risk of this Chevrolet car."

During the argument to the jury, plaintiff's attorney, in an all too thinly veiled manner, repeatedly referred to this matter of insurance, as will be illustrated by the following quotations:

"Now, Mr. Stapleton appeals to your sympathy; he says 'these poor Belgian immigrants' (Simeons), 'working to pay a judgment,'—I want to say to you, gentlemen, they will never sweat one day paying any judgment, no, not any more than they will paying their attorney. When I asked him, on cross-examination, what arrangements he had, Mr. Stapleton comes up and would conceal and mislead you."

"I am not worried at all about getting the compensation in full if the eight thousand is allowed as against Camiel. Camiel wasn't worried about it, either, when he signed that affidavit, Exhibit E; he was not caring how big a judgment was rendered here then."

Referring to Mr. Stapleton, defendant's attorney, plaintiff's attorney said:

"He isn't interested in this man, this poor Belgian that he speaks about [the defendant]. He knows that he is never going to worry a day about any judgment that you render."

"John [Stapleton, defendant's attorney] can jump up all he wants to, but *he hasn't been representing Mr. Camiel Simeons in this lawsuit.*"

The foregoing arguments are unmistakable references to insurance, so pointedly made as to reach any average juror. An insurance company would pay the judgment.

With this record under consideration, it becomes important to examine some of the recent opinions of this court in similar cases. In 1925, in *Ryan v. Trenkle,* 199 Iowa 636, Justice Evans said:

"It is quite apparent that the verdict was influenced by extraneous matter. One of such extraneous matters was the *diligent suggestion,* by examination of jurors and otherwise, that the damage sued for had been insured against. The impression thus conveyed to the jury naturally was that the action was a *mere method of collecting insurance.* This seems to be a growing practice of trial strategem, which is not calculated to secure a fair trial, and which incurs the increasing disfavor of the courts [citing cases from many jurisdictions]." (Writer's italics.)

In 1926, in *Berridge v. Pray,* 202 Iowa 663, the late Justice Vermilion said:

"We have expressed ourselves in no uncertain terms on the ultimate question here involved,—the impropriety of suggesting to the jury that the damages sued for were covered by insurance. *Ryan v. Trenkle,* 199 Iowa 636."

In 1927, in *Rudd v. Jackson,* 203 Iowa 661, *per curiam,* this court said:

"The record does, however, disclose that counsel for appellee persisted in interrogating some of the witnesses on cross-examination as to the relationship between them and one Mischler, who was the agent of the casualty company that had insured the risk, thereby bringing to the attention of the jury the fact that the defendant carried indemnity insurance. It is sought to justify the cross-examination upon the ground that it was proper, as bearing upon the interest of the witness. The examination, however, far transcended the proper limits of cross-examination, even for this purpose. Evidently, the principal purpose of the cross-examination was to get before the jury the fact that the defendant was protected against liability by insurance. We have heretofore criticized the attempt of counsel to inject this fact into the evidence for the purpose of its effect upon the jury. *Ryan v. Trenkle,* 199 Iowa 636; *Berridge v. Pray,* 202 Iowa 663. Courts in many other jurisdictions have

held that for counsel to willfully bring before the jury in a personal injury suit the fact that the defendant is protected by indemnity insurance is a ground for reversal. *Simpson v. Foundation Co.*, 201 N. Y. 479 (95 N. E. 10) ; *Carter v. Walker* (Tex. Civ. App.), 165 S. W. 483; *Marlin v. Lilly*, 188 Ind. 139 (121 N. E. 443) ; *Cady v. Lang*, 95 Vt. 287 (115 Atl. 140) ; *St. Jean v. Lippitt Woolen Co.* (R. I.), 69 Atl. 604; *Moorefield v. Lewis*, 96 W. Va. 112 (123 S. E. 564) ; *Vasquez v. Pettit*, 74 Ore. 496 (145 Pac. 1066) ; *Chybowski v. Bucyrus Co.*, 127 Wis. 332 (106 N. W. 833) ; *Sherwood v. Babcock*, 208 Mich. 536 (175 N. W. 470) ; *O'Hara v. Lamb Const. Co.* (Mo. App.), 197 S. W. 163; *Standridge v. Martin*, 203 Ala. 486 (84 So. 266) ; *Burgess v. Germany-Roy-Brown Co.*, 120 S. C. 285 (113 S. E. 118) ; *Blue Bar Taxicab & Trans. Co. v. Hudspeth*, 25 Ariz. 287 (216 Pac. 246) ; *International Co. v. Clark*, 147 Md. 34 (127 Atl. 647) ; *Boals Planing Mill Co. v. Cleveland, C., C. & St. L. R. Co.*, 211 Ill. App. 125; *Kentucky Wagon Mfg. Co. v. Duganics* (Ky.), 113 S. W. 128."

In 1929, in *Miller v. Kooker*, 208 Iowa 687, this court, speaking through Justice Morling, said, among other things:

"Defendant assigns as error misconduct in bringing and keeping prominently before the jury the fact that defendant carried casualty insurance, was not the real party concerned in the recovery asked, and would not personally suffer from an adverse verdict. * * * In the examination of the jurors on their *voir dire*, plaintiff, over objection, persisted in inquiring of the jurors whether they carried insurance on their cars, whether they were interested in any way in any organization writing insurance against liability for damages caused by accident, whether they wrote such insurance, or whether it was their duty to adjust claims for personal injuries. The jurors to whom these inquiries were addressed consisted largely of farmers and farm wives. Plaintiff knew that defendant was insured in the Travelers' Company, * * * It is, for present purposes, a sufficiently complete statement of the case to say that the two questions to be tried were: First, was defendant's driver negligent, and second, was plaintiff negligent? The fact that defendant's liability for his driver's negligence, if any, was insured, could have no possible legitimate bearing upon the proper determina-

tion of these questions. If defendant was insured, he was still not responsible if his driver was not negligent. * * * *It is, however, utterly repugnant to a fair trial or to the securing of the rendition of a just verdict on the facts that the jury should, by direction or indirection, be informed that the defendant will not suffer from an adverse verdict, and that some corporation will bear the consequences."* (Writer's italics.)

In a recent article found on page 228 of the February, 1930, issue of the Iowa Law Review (Vol. XV, No. 2), will be found an interesting and instructive review of cases on this subject.

Viewed in the light of the foregoing quotations, how can it be said that the trial in this case was without prejudicial error? Surely, here was a "diligent suggestion" of insurance. It would not be fair to the learned and distinguished counsel who tried the case for the plaintiff to assume that they really suspected that the farmer and laboring men who were being examined on the *voir dire* were stockholders in the Great Western Casualty Company of Fort Scott, Kansas, or in any other similar organization. Undoubtedly, most of these jurors were well known to the attorneys of the plaintiff.

It will be noted that the minor, Andrew Simeons, was retained as one of the defendants in the case until after the testimony of the city marshal and the sheriff concerning statements made by the minor regarding insurance had been passed into the record, and then the case against him was dismissed.

When the witness Dwyer testified that the boy, Andrew Simeons, in the conversation at the sheriff's office, said, "I don't care, I have insurance," plaintiff's attorneys well knew, as trained, experienced veterans in the practice, that the question of insurance was wholly immaterial to the issues then before the court and jury.

The witness Cafferty, sheriff of Iowa County, went over the testimony concerning the boy Andrew's conversation at the sheriff's office at considerable length, in his examination in chief, and then, after cross-examination, it seemed advisable to plaintiff's attorneys, on redirect, to ask: "What, if anything, further did he say in your hearing than what you told in direct examination about that car and about that collision?" To this

the sheriff promptly responded: "He said he carried insurance; he said the car carried insurance."

While it is claimed by the plaintiff's attorneys that the answer to the questions propounded to the jurors on the *voir dire* were essential, as protection to the plaintiff, it certainly cannot be claimed that the statements of the boy, Andrew Simeons, that he had insurance could possibly be of any value to the plaintiff, except to improperly influence the minds of the jury and lead them to believe that the cause on trial was *"a mere method of collecting insurance."* Manifestly, however, if, in truth and in fact, the conversation relating to insurance is a part of a material admission made by a party properly thus charged, it may be called for.

It will be noted that, in the proceedings in chambers, in the absence of the jury, plaintiff's attorneys had the defendant's attorney sworn, and then proceeded to ask him if he represented an insurance company in the defense of the case, and then, upon the sustaining of an objection, made a proffer of evidence in the record that the defendant's attorney was in fact representing the Great Western Casualty Company, of Fort Scott, Kansas. Then later, before the jury, while the defendant, Camiel Simeons, was on the stand, he was asked:

"What arrangements do you have as to paying your attorney in this case? Isn't it a fact that you are not to pay your attorney any money yourself?"

Then, upon the sustaining of objections to these questions, plaintiff's attorney, in the presence of the jury, make a proffer of evidence in the record to the effect that the defendant's attorney was being paid by an insurance company, "which stands the risk of this Chevrolet car."

True it is that this proffer was made to the reporter, in a voice, on the face of things, low enough so that the jury could not hear. It is fair to assume that the jurors sitting in that case fully realized and appreciated what information was thus being kept from them.

The question of insurance was wholly immaterial. There was here a continued course of "diligent suggestion" that the defendant was protected by insurance, and it was prejudicial. These suggestions continued from the opening to the close of the

case. The defendant in the case was entitled to have the issues determined upon their merits, without having injected into the trial, by direction or indirection, any extraneous subject or influence. Moreover, it is a matter of common knowledge that insurance contracts are but contracts of indemnity. There are no primary liabilities to the plaintiffs. The indemnity may be for small or large amounts. Because of continued references to insurance, the jury may easily be led to believe that the defendant is carrying insurance far in excess of what he may have, if he has any, and thus a verdict beyond the indemnity protection may be returned against the defendant, and finally, as was said in *Miller v. Kooker*, supra:

"It is, however, utterly repugnant to a fair trial or to the securing of the rendition of a just verdict on the facts that the jury should, by direction or indirection, be informed that the defendant will not suffer from an adverse verdict, and that some corporation will bear the consequences."

There was prejudicial error against the defendant in this case.

Many other questions have been raised and argued, but it is not necessary to discuss them. For the errors hereinbefore pointed out, the case must be, and is,—*Reversed*.

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.