FRED W. RUTHERFORD, Plaintiff; MARY RUTHERFORD, Administratrix, Substituted Plaintiff, Appellee, v. J. H. GILCHRIST, Defendant, Appellant.

No. 42456.

JUNE 23, 1934.

REHEARING DENIED DECEMBER 13, 1934.

Nichol & Nichol, for appellant.

Lee, Steinberg & Walsh, McCoy & McCoy, and Welty, Soper & Welty, for appellee.

ANDERSON, J.—This action was originally commenced in the name of Fred W. Rutherford as plaintiff. Subsequently Rutherford died from causes other than the injury received in the accident here involved, and Mary Rutherford, administratrix of his estate, was substituted as plaintiff. In the following discussion we will refer to Fred W. Rutherford as the plaintiff.

The incident out of which this controversy arises occurred on the Lincoln Highway about four miles west of Ames, Iowa, on the

27th day of March, 1931. A short time before the accident in question the course of the Lincoln Highway had been changed at the point of the collision and a new grade and pavement constructed. Because of this fact, the shoulders of the grade were unsettled and soft. On the afternoon of the day of the accident, a truck belonging to the defendant-appellant loaded with coal slipped off the pavement and became stalled. The defendant sent additional trucks which were unable to pull the stalled truck onto the pavement, and a part of the coal was unloaded into another truck. During these proceedings a truck belonging to one Roth which had been stopped behind the coal truck became stalled, and, after the coal truck was gotten upon the pavement, another one of the defendant's trucks backed down the pavement behind the stalled truck of Roth's with the view of giving him a start from the rear by a push. In attempting to do this, defendant's truck was stopped diagonally across the pavement with its rear end extending slightly over the black line in the center of the pavement. Another car approached from the opposite direction and pulled partly off of the pavement and also became stalled. With this situation existing, the plaintiff-appellee, Fred Rutherford, riding as a guest with his brother in a Ford coupe traveling east, collided with the truck of the defendant, Gilchrist, which was assisting to place the Roth truck back on the pavement. There is a sharp conflict in the evidence as to the time of day the collision occurred. The plaintiff contends that it was about 7:30 p. m., and the defendant and many other witnesses testified that it was between 5 and 5:30 p. m. There were no lights displayed upon the defendant's truck. It was a blustery March day, blowing and snowing, and the pavement was in a slippery condition caused by the rain and snow and sleet. The plaintiff claims that it was dark and he could see nothing ahead without his lights on, and that they were only traveling 25 or 30 miles an hour, and that with the lights on he could only see 50 to 100 feet ahead of his car. Several witnesses testified that they saw the car in which plaintiff was riding coming down the pavement, which had a slight grade, for 300 or 400 feet away from the place of the accident; that it was coming fast and swerving from one side of the pavement to the other. Roth, who was in his stalled truck, and Griffith, who was the defendant's foreman, saw the car in which plaintiff was riding approaching, as we have indicated, and both ran to the side of the road off from the pavement to save themselves from injury. The plaintiff testified

that the lights on the car in which he was riding were burning, as were also the lights upon the stalled car on the opposite side of the road from the stalled truck. All of the witnesses other than the plaintiff and his brother testified that it was not dark, and that they could plainly see the plaintiff's car approaching 300 to 400 feet distant. The driver of the car in which plaintiff was riding was unable to stop it and came into collision with the truck of the defendant, which, as we have indicated, was at that time diagonally across the pavement with its rear end slightly over the black line, and the plaintiff received a broken leg and other injuries. The case was submitted to a jury, and a verdict was returned for the plaintiff in the sum of $2,750. The defendant's motion for a new trial was overruled, and the defendant appeals.

Several errors are assigned by the defendant, and the plaintiff contends that the assignments of error do not conform to rule 30, but we are of the opinion that the assignments do conform to that rule, and we will consider some of them.

The appellant contends that the court erred in overruling defendant's motion for a new trial on the ground that the record shows affirmatively that plaintiff was guilty of contributory negligence barring his recovery, and that the court also erred in overruling the motion upon the ground that the verdict was excessive. As the case must be reversed upon other assigned errors, we will not consider or comment upon these alleged errors.

The appellant also complains of the trial court's failure to direct a verdict for the defendant on the defendant's motion based upon the ground that no negligence upon the part of the defendant was shown. In view of what we have said above, we will not comment upon this assigned error.

The appellant complains and assigns as error the ruling of the court in permitting evidence to be introduced to the effect that the defendant was carrying liability insurance. Such evidence was introduced over the objection of the defendant, and a motion to strike the same was overruled; and a motion to discharge the jury and continue the case was also overruled. The appellant assigns these rulings as error, and also contends that the court erred in refusing to grant the defendant a new trial based upon misconduct of appellee's counsel in injecting the insurance feature into the case by the testimony of a witness, Clyde Rutherford. The testimony pertinent to the determination of this question is as follows:

"Q. Did you have a conversation with him there at that time? A. Yes, sir.

"Q. Will you go on, now, and relate the conversation that you had with him at that time and place?

"Mr. Nichol: That is objected to as incompetent, immaterial and irrelevant, calling for extraneous matters.

"The Court: He may answer. (Defendant excepts.)

"A. I asked him if he knew about the accident and he said yes, that he had been talking to the driver of the truck that I had run into.

"Mr. Nichol: Now, I move to strike that as immaterial, incompetent, has no bearing on the issues in this case.

"The Court: Overruled, and defendant excepts.

"Q. Go ahead, and relate the conversation you had.

"Mr. Nichol: Now, I renew the objection, as an attempt to call for extraneous matters, prejudicial.

"The Court: He may answer. (Defendant excepts.)

"A. Well, he said that he had talked to the driver of the truck, and he knew about the accident, and he wanted to go down to the—

"Mr. Nichol: Now, this is objected to as incompetent, and immaterial and we move to strike it for that reason, no showing that the defendant, Gilchrist, was present at the time of the accident, and this line of testimony is being pursued for the one and only purpose of calling for extraneous matters.

"The Court: He may answer. (Defendant excepts.)

"A. He said he wanted to go down to the city hall, down to the police station, and see the police record that was given in by his driver and myself.

"Mr. Nichol: Now, we move to strike that for the reasons last urged. (Overruled, the defendant excepts.)

"A. So we started down to the police department, and I told him about my car was all smashed up, and my brother had got his leg broken in the accident, and I asked him what he was going to do about it. Well, he said that I didn't need to worry about my brother's leg being broken, and that he would take care of the bill —he would see that the bill was taken care of.

"Mr. Nichol: I move to strike that for the reasons last urged.

"The Court: Overruled. (Defendant excepts.)

"A. (continued) He told me that he had insurance on all of his trucks, and he would see that my car—the repairs on my car and the doctor bill of my brother would be taken care of.

"Mr. Nichol: We move to strike that for the reasons last urged.

"The Court: Overruled. (Defendant excepts.)"

At the close of the testimony this matter was again brought to the attention of the court by the defendant's request to the court to dismiss the jury and continue the case over the term, because of the prejudicial and extraneous matters brought to the attention of the jury by reason of the foregoing testimony. It was also incorporated in defendant's motion for a new trial. The appellee claims that a part of the conversation detailed above was material and relevant; that the court should not have excluded the same because of the reference therein to the insurance feature. We are unable to agree with the appellee's contention at this point. There is absolutely nothing in the conversation detailed which can in any way be construed as an admission of negligence or liability. The evident purpose, and the only purpose apparent, of the introduction of this testimony, was to get before the jury the fact that the defendant carried liability insurance. We have many times held that the introduction of such testimony is prejudicial and constitutes misconduct sufficient to reverse.

In the case of Ryan v. Simeons, 209 Iowa 1090, 229 N. W. 667, we had this question under consideration, and in that case the record as to the injection of the insurance feature is almost identical with the record in the case at bar. Mr. Justice Grimm of this court reviewed the decisions of this and other courts on the question involved, and we there said:

"The question of insurance was wholly immaterial. There was here a continued course of 'diligent suggestion' that the defendant was protected by insurance, and it was prejudicial. * * * The defendant in the case was entitled to have the issues determined upon their merits without having injected into the trial, by direction or indirection, any extraneous subject or influence. * * * Because of continued references to insurance, the jury may be easily led to believe that the defendant is carrying insurance far in excess of what he may have, if he has any, and thus a verdict beyond the indemnity protection may be returned against the defendant, and finally, as was said in Miller v. Kooker, 208 Iowa 687, supra, 'It is,

however, utterly repugnant to a fair trial or to the securing of the rendition of a just verdict on the facts that the jury should by direction or indirection be informed that the defendant will not suffer from an adverse verdict and that some corporation will bear the consequences.' There was prejudicial error against the defendant in this case."

In Ryan v. Trenkle, 199 Iowa 636, 200 N. W. 318, speaking through Justice Evans, we used this language:

"It is quite apparent that the verdict was influenced by extraneous matter. One of such extraneous matters was the diligent suggestion, by examination of jurors and otherwise, that the damage sued for had been insured against. The impression thus conveyed to the jury naturally was that the action was a mere method of collecting insurance. This seems to be a growing practice of trial stratagem which is not calculated to secure a fair trial and which incurs the increasing disfavor of the courts."

In Berridge v. Pray, 202 Iowa 663, 210 N. W. 916, we said:

"We have expressed ourselves in no uncertain terms on the ultimate question here involved, the impropriety of suggesting to the jury that the damages sued for were covered by insurance."

In Rudd v. Jackson, 203 Iowa 661, 213 N. W. 428, we said:

"Evidently the principal purpose of the cross-examination was to get before the jury the fact that the defendant was protected against liability by insurance. We have heretofore criticized the attempt of counsel to inject this fact into the evidence for the purpose of its effect upon the jury." See, also, to the same effect, Holub v. Fitzgerald, 214 Iowa 857, 243 N. W. 575; Tissue v. Durin, 216 Iowa 709, 246 N. W. 806; McDermott v. Johnson, 193 Iowa 19, 186 N. W. 630; Kuhn v. Kjose, 216 Iowa 36, 248 N. W. 230, and many other Iowa cases referred to in the cited cases.

Such also has been almost the universal holding of courts of other jurisdictions, as is shown by the list of such cases contained in the opinion of Ryan v. Simeons, supra, appearing upon page 1097 of that opinion.

From the foregoing discussion, it must be concluded that the trial court erred in permitting the introduction of this testimony

into the record of this case. Such error was prejudicial and must result in a reversal.

There is one other matter with which we should concern ourselves, and that is in submitting to the jury the doctrine of the last clear chance. By an amendment to his petition the plaintiff set up this doctrine and alleged that the defendant was negligent when his employees saw the plaintiff in a place of danger and thereafter failed to use reasonable care to avoid injuring him. The defendant moved to strike this amendment and also to withdraw the question thus raised from the consideration of the jury. These motions were overruled by the trial court, and such ruling was duly excepted to. The defendant's contention is that there was not sufficient evidence to support this allegation of negligence, and that the court erred in submitting it to the jury. With this contention we agree. In order to invoke the doctrine of last clear chance, it must be shown, and it is a fundamental prerequisite, that the defendant must discover the perilous position of the plaintiff *in time to avoid injury by the exercise of ordinary care.* Steele v. Brada, 213 Iowa 708, 239 N. W. 538, and other cases therein cited. In the case at bar, it was necessary for this doctrine to apply, that the employees of the defendant have actual knowledge that the plaintiff was in a place of danger, and they must have had such knowledge in time to warn plaintiff to the end that the collision could be avoided. The burden of proof was upon the plaintiff to show, not only that the defendant's employees had knowledge of the perilous position of the plaintiff, but that they had such knowledge in time to warn the plaintiff of the approaching collision and thus avoid it. It is apparent from the record that no one at the place of the stalled trucks had time, after the plaintiff's car came into view, to warn the plaintiff or the driver of the car or do anything that would have avoided the accident. The testimony is that the plaintiff's car was coming down the slippery, icy, pavement at a speed of from 30 to 50 miles an hour, and that the persons at the place of the stalled trucks, including the employees of the defendant, had no time to warn the plaintiff or the driver of the car in which he was riding in time to have avoided the collision. In fact, they had no time to do anything other than hastily get out of the zone of danger themselves. All of the witnesses who were at the scene of the accident testified that they knew the plaintiff's car could not be stopped in time to avoid the collision after it came in view. Under this situation, we think it was error to submit

the doctrine of the last clear chance as a ground of negligence to the jury. Neither can we approve the form of the instruction in which the court attempted to submit this ground of negligence. In the instruction referred to the court said to the jury that:

"Under the law it became the duty of said employees of the defendant to use reasonable care and caution to give warning so as to enable the driver of the car in which the plaintiff's intestate was riding, if possible, to escape the danger that he was approaching." It will be noticed that in this quotation, as well as the entire in-struction in reference to this issue, the court failed to instruct the jury to the effect that such duty was imposed upon the defendant if he discovered the perilous situation of the plaintiff in time to warn him of the danger he was approaching. As a new trial must be had, we refrain from extending this opinion to further comment upon the submission by the court of the ground of negligence involved in the last clear chance doctrine, and the manner of its submission, as such error will probably not occur upon a new trial. It follows, from what we have said, that the case must be reversed.—Reversed.

CLAUSSEN, C. J., and STEVENS, ALBERT, MITCHELL, and KINT-ZINGER, JJ., concur.