CLARINDA M. REID, Administratrix, Appellant, v. ROBERT W. BROOKE, Appellee.

No. 43176.

APRIL 7, 1936.

Messer & Nolan, and Harold E. Wilson, for appellant.

Hallagan, Fountain & Stewart, and Albee & Albee, for appellees.

RICHARDS, J.—The accident in which plaintiff's decedent lost his life occurred at about 1 o'clock in the afternoon of October 26, 1932, in the town of West Liberty. Columbus street in that town extends north and south, intersecting Third street, which extends east and west. Both streets have paving which is about 28 feet and 8 or 10 inches in width. Shortly before the decedent received his injuries, defendant was driving an Essex coupe proceeding south on Columbus street toward Third street. He stopped his car before entering Third street. The car, headed south or a little southwest, then stood astraddle the pedestrian crossing of Columbus street where pedestrians proceeding east or west on the sidewalk on the north side of Third street would naturally walk across Columbus street. The south end of defendant's car extended south, and the north end extended north of such pedestrians' crossing. At about this time, plaintiff's decedent was walking west on the north side of Third street. There is evidence that defendant called the decedent to the car so standing, to hand decedent some checks. Decedent went to the west side of defendant's car, and, while standing there in conversation with defendant, with defendant's car in the same position as described, one Fredda Gastineau, a resident of Detroit, and with no previous knowledge of the streets in West Liberty, was driving a Chevrolet coach toward the west on Third street, following the course of primary highway No. 6 as marked through West Liberty. This primary highway comes from the east on Third street and then turns north on Columbus. Mrs. Gastineau, in order to follow her route, turned toward the north from Third street to travel north on Columbus. The record establishes that her rate of speed was less than twenty-five miles per hour before she changed her direction, and thereafter

the speed was lessened by application of her brakes. In making this turn into Columbus street, the Gastineau car was so operated that its left front wheel struck the left front wheel or left front part of defendant's car. As one result of the collision, the right front wheel of defendant's car was broken against the curb on the west side of Columbus street, and defendant's car was left standing with its running board projecting somewhat over the curb and its rear right wheel a foot or so out from the curb. After the impact, defendant's car was still standing astraddle the pedestrian's place of crossing Columbus street in the same manner as it straddled said crossing when it first stopped. Decedent, standing at the west side of defendant's car at the time of the impact, was found immediately thereafter lying flat on his back on the paved sidewalk that extends west from the west curb of Columbus street. The back of his head was resting on the paved sidewalk, as was the remainder of his body extending in an east and west direction, with head to the west and one foot just over the curb pinned under the running board of defendant's car. Decedent had received a bump or blow on the back of his head, causing a basal skull fracture. He was unconscious, and soon died from these injuries. It is the claim of plaintiff that the proximate cause, or a concurring proximate cause, of this injury and death of plaintiff's decedent, was defendant's negligence. She says the negligence consisted in the alleged fact, when defendant stopped his car, as before related, its west side was 11 feet east from the the west curb on Columbus street, and the car, being about 6 feet in width, its east side would be only 11 feet from the east curbing, thus blocking the middle of the street, and leaving but eleven or twelve feet for the passage of cars proceeding as was the Gastineau car. Plaintiff also claims that by so doing defendant violated Code section 5056 which provides it shall be unlawful to stop a motor vehicle on the street, in cities and towns, unless the right side of said vehicle is next to and parallel with the curb and as near thereto as the condition of the street will permit. A reading of the record compels the conclusion that the evidence offered by plaintiff does not warrant submitting to the jury this question of fact on which appellant's contention depends. Plaintiff offered in evidence the witness Lawton, an employee of a Shell service station at the northwest corner of the intersection of the two streets. He testified that he observed defendant's car stand-

ing across the pedestrian crossing and saw the decedent standing at the west side of the car in conversation with the defendant. As to the location of defendant's car at that time, he testifies that it was not as much as a foot east of the west curb on Columbus street, but about that distance, and that decedent was standing on the pavement between the car and curb just prior to the collision by the Gastineau car. However, plaintiff also introduced another witness, Elizabeth Hedges, on the question of the place where defendant's car stood. In substance, her testimony was: that she stood at the southwest corner of the intersection of these two streets and saw the accident; that the position of defendant's car as it stood before the impact was astraddle the pedestrian crossing of Columbus street in the position before described; that a year and four months after the accident, in the presence of plaintiff's attorneys, she had an Essex coupé placed astraddle the pedestrian crossing at a place which it then seemed to her was the place where defendant's car had stood; that she then measured the distance of the car so placed and found that it was 11 feet east from the west curb on Columbus street; that she is of the opinion, arrived at in such manner, that defendant's car was standing at that distance east from the curb; that, when the cars came together, the decedent, who was standing on the west side of defendant's car, threw up his hands, *fell through the air,* and hit the sidewalk on the west side of the street; and remained where he fell; that defendant's car was shoved up into the curb.

While plaintiff is entitled to have her evidence considered in a light as favorable to her contention as is reasonably possible, and while it is the province of the jury rather than of the court to weigh the credibility of testimony of witnesses, yet we are constrained to hold that the character of the testimony of the witness Hedges is such that the case is ruled by McGlade v. City of Waterloo, 178 Iowa 11, 156 N. W. 680, and First Savings Bank v. Edgar, 199 Iowa 1136, 199 N. W. 1011; that is, it appears to us that this testimony on which plaintiff relies is in conflict with incontestable facts, and is entirely inconsistent with any theory other than that the witness Hedges must have been mistaken. The primary force or push of the Gastineau car was necessarily in the direction in which it was proceeding; that is, toward the north and somewhat toward the west. The admitted condition of the two cars after the accident—that is, a damaged

front axle, a bent front fender and injured front tire on the left side of the Gastineau car, and the breaking of the right front wheel of defendant's car against the curb—makes it quite certain that there was no such possible momentum as would have been sufficient to shove defendant's car to the west at right angles to any movement on its own wheels, for a distance of 11 feet or any other considerable distance. It is unquestioned in the record that defendant's car stood, before and after the impact, in the same position relative to the east and west pedestrian crossing. From this established fact and the other factors already mentioned, it is necessary to conclude that, if the Gastineau car shoved the defendant's car for a distance of 11 feet, or any other considerable distance, the force must have been applied in a directly westerly direction, which conclusion is entirely inconsistent with the direction in which the Gastineau car was moving. As suggested, such conclusion also depends on accepting it as true that defendant's car was pushed at right angles to the direction in which the car could be moved by aid of its own wheels revolving. It appears impossible to accept plaintiff's theory that the Gastineau car, exerting its momentum toward the north and west, in which direction the wheels of defendant's car, by revolving on their axles, would assist in a movement toward the north, accomplished the extraordinary thing of moving defendant's car directly to the west for a distance of 11 feet or for any other considerable distance. So far as interrogated, plaintiff's witnesses observed no tire or skid marks. The testimony that the body of decedent flew or fell through the air for any such distance, hit the sidewalk, and remained where it fell, cannot be accepted as evidentiary, because from the physical facts it is not within reason that there was any impact of the cars of sufficient force to catapult the decedent's body in such manner. Its impossibility is made the greater in that, though claimed to have been hurled through the air in this manner, the decedent's body remained where it fell, and in that it appears from the evidence of the physicians attending the decedent that the only injury they noted on decedent's body was a large bruise or bump on the back of his head. That he received this injury when he fell backwards on the sidewalk the admitted facts seem to establish beyond any doubt. When the force of impact was spent and things came to rest, decedent's feet were extending just beyond the curb, one of them pinned

under the running board, which fact would strongly indicate that decedent was standing with one or both feet on the paving in the small space between the curb and the car, as related by plaintiff's witness Lawton, when the collision came and the front wheel was broken against the curb, and the car moved enough that the running board was above the curb. That seems to be the necessary conclusion as to the relative position of decedent and of defendant's car at the moment of impact. We are of the opinion there was not sufficient evidence to submit to the jury the question whether defendant was negligent on account of the location in which he stopped his car.

■■■ There is also advanced by plaintiff the proposition that defendant knew the Gastineau car was about to hit his car, but did not warn decedent of the danger. Thereon plaintiff invokes the last clear chance doctrine. There is the evidence of plaintiff, as a witness, that, in a conversation, defendant said that he saw the Gastineau car coming and grabbed his steering wheel, and that he did not inform decedent thereof. There is no attempt to disclose the length of time intervening between defendant's discovery of the impending accident and its actual occurrence, nor is there anything in the record from which a jury could find that defendant, in exercise of ordinary care, had time or opportunity to warn decedent so that he might have avoided the injury. These elements were essential to the invoking the last clear chance doctrine, Rutherford v. Gilchrist, 218 Iowa 1169, 255 N. W. 516, if such doctrine is applicable to this fact situation at all.

Our conclusion is that the district court correctly sustained defendant's motion for a directed verdict. The judgment of the district court is affirmed.—Affirmed.

DONEGAN, C. J., and STIGER, ANDERSON, PARSONS, HAMILTON, KINTZINGER, MITCHELL, and ALBERT, JJ., concur.