HARMON BRADY, administrator of the Estate of GEORGIA BRADY, appellee, v. EARL McQUOWN et al., appellants.

No. 47523.

(Reported in 40 N.W. 2d 25)

DECEMBER 13, 1949.

Page & Nash, of Denison, and R. E. Duffield, of Guthrie Center, for appellants.

Batschelet & Thompson, of Guthrie Center, for appellee.

SMITH, J.—Georgia Brady (fifty-seven), plaintiff's intestate, was killed in the early afternoon of Mother's Day (May 12), 1946. She was riding on the right front seat of her husband's Model A Ford, driven by her daughter, Neva (nineteen), traveling eastward on Highway 64, about one and one-half miles east of Guthrie Center.

Defendant's car, driven by defendant Earl McQuown, Jr. (twenty-three), was coming from the east with William Joseph Wood (twenty) as a passenger. The young men were cousins. The cars collided at or near the crest of a small hill. The evidence was in some conflict as to the movement of the cars and the place on the pavement where the collision occurred. The jury found for plaintiff, and defendants appeal from the resulting judgment.

Extended statement of the evidence is unnecessary since its sufficiency to go to the jury is not questioned. The defendants assign errors which we shall discuss in their order of assignment.

I. The defendant-driver testified that immediately after the collision *"Miss Brady told me she and her mother were driving along talking; they weren't watching the road."* The testimony was first admitted over, and then stricken on, the objection of incompetency, irrelevancy, immateriality and hearsay.

The witness was, however, then permitted to testify that Neva Brady told him her mother said " 'Look out for the car' "; that she (Neva) was driving on the north side of the road, did not

see the McQuown car until just before they collided, and that she "turned back to her side of the road without thinking what she was doing." The rulings were not very consistent but we think no prejudice resulted.

It is argued the part stricken (italicized above) was vital with special respect to the issue of decedent's contributory negligence. Foundation for its admission for purpose of impeachment had been laid by cross-examination of Miss Brady who denied telling defendant "that we were not watching the road just before the collision." She said she told him that her mother saw the car first and said, " 'Look out for the car.' "

Doubtless the statements were all admissible as part of the res gestae apart from any purpose of impeachment. Duncan v. Rhomberg, 212 Iowa 389, 394, 236 N.W. 638; Aldine Trust Co. v. National Benefit Acc. Assn., 222 Iowa 20, 23 et seq., 268 N.W. 507. But unfortunately for defendants' contention the stricken portion was also, in substance, testified to by Mr. Wood (unchallenged and undenied): "When I came back down to the cars [after telephoning for help] Neva Brady came over to me and told me it was her fault and she was sorry; *that she and her mother were talking and looking around and wasn't watching where they were going.*"

With this testimony the statement of Miss Brady was squarely presented to the jury notwithstanding its previous exclusion. It was in the record for whatever it was worth as substantive evidence of contributory negligence. The statement was made to Mr. Wood. Whether it was also made to defendant could not be so important as to justify a reversal.

So far as concerned decedent's care or want of care the testimony was somewhat in the nature of a conclusion. The daughter could speak with knowledge as to her own watchfulness or lack of watchfulness of the road and where they were "going", but she could only infer as to her mother's mental alertness. Furthermore, the testimony, though admissible as part of the res, was subject to some of the frailty of hearsay as applied to her mother's statement. It was not direct testimony but subject to possible misunderstanding and mistake.

We are aware of the rule fixing the degree of care required of decedent as a mere passenger and that the burden of proof on

that issue was on plaintiff, but with the Wood testimony and the other evidence of the location and movements of the cars and the opportunity of the parties to see oncoming vehicles, the exclusion of the testimony of defendant of the same or similar statement by Miss Brady as that made to Wood cannot be treated as prejudicial error. Morrow v. Downing, 210 Iowa 1195, 1201, 232 N.W. 483.

■ II. Highway patrolman, Chevalier, arrived at the scene shortly after the collision. The cars were still there. In the course of his testimony as to his investigation he testified to black marks on the pavement which he referred to as "tire burn marks." The trial court struck the answer. Immediately following he again called them "black tire marks, burn marks." That answer was allowed by the court to stand. In a third answer, however, he spoke of the "tire marks" and the trial court struck the answer. Again there was inconsistency in the court's ruling but again we find no prejudicial error.

There was subsequent testimony of measurements of the marks by both the patrolman and the sheriff and the situation of such marks on the pavement with reference to the McQuown car. The nature of the marks could not be mistaken and reference to them as "tire marks" and "burn marks" with the subsequent descriptive testimony was not erroneous.

Defendants argue that the witness might have described the marks, "their appearance, length and other circumstances relating thereto." Plaintiff says a witness may describe what he saw —may state the fact as he saw it. There is no great difference in these contentions. When an object or a condition acquires a commonly used and understood name the name itself constitutes about as good a description as can be used.

When a rubber-tired vehicle, traveling at a high rate of speed on pavement is suddenly attempted to be stopped by application of the brakes preventing the wheels from turning, it skids and makes marks on the pavement. The fact is common knowledge. The marks could be described perhaps by color, size, location, etc., but the name "tire marks" or "skid marks" or "tire burn marks" is about as descriptive as any language that could be used. Such name, like the term "footprints", has ceased to be a mere conclusion and when by other evidence the mark so described is

connected with the particular vehicle in question, as was done here, there can be no error involved in its use.

The damaging part (to defendants' cause) of the evidence at this point was not due to the name the witness used in describing the marks but to the testimony that showed they led to defendants'·car when it came to rest and showed the course it took to reach that point. There was no error here.

III. The sheriff as a witness for plaintiff in detailing a conversation with young McQuown at the scene of the accident testified:

"I asked him if he was the owner of the car and he said he was; and I asked him what he was doing on the south side of the road and he said he thought this Model A [the Brady car] was going to pull into that driveway. I asked him how he knew there was a driveway there coming from the east and he didn't answer that question, but he said, 'Well, I am sorry it happened.' He said, 'I called my father and my attorney', and he said 'I have insurance to take care of this.' "

At this point defendants' counsel interposed objection and in the absence of the jury demanded a mistrial. The motion for mistrial was denied but upon further motion the reference to insurance was stricken from the record and the jury admonished to disregard it.

We have set out above the entire answer of the witness upon which the trial court concluded: "* * * that there was no misconduct on the part of the attorney for the plaintiff; that what was said about the insurance matter was simply unintentional on the part of counsel and was given by the witness not knowing just what the true effect would be."

We agree with this appraisal of the situation. The trial court was in a particularly favorable position to make it. There was no reversible error under this assignment. Stilson v. Ellis, 208 Iowa 1157, 1169, 225 N.W. 346; Albert v. Maher Bros. Trans. Co., 215 Iowa 197, 213, 214, 243 N.W. 561. The case here is not analogous to those cited by defendants in which the subject of insurance was intentionally brought in and improperly emphasized. See e.g., Floy v. Hibbard, 227 Iowa 149, 287 N.W. 829; Ryan v. Simeons, 209 Iowa 1090, 229 N.W. 667.

It may be doubted that the testimony was inadmissible, constituting, as it did, a voluntary statement by defendant and a part of his conversation with the sheriff. However, it was essentially immaterial and was properly stricken on motion and the admonition to the jury doubtless removed any prejudice arising from its injection into the record.

It is argued the incident became especially prejudicial because plaintiff's counsel, in examining the jurors on voir dire, inquired as to whether any of them was in any way connected with any company writing casualty insurance. There was no record made or objection urged when the examination took place, but defendant was later permitted to show the fact by placing plaintiff's counsel on the stand in connection with a motion for new trial. The counsel testified he first asked the question of the original panel ("the first 16") as a group and thereafter repeated it once or twice to some talesmen subsequently called. The procedure was not materially different from that approved in Raines v. Wilson, 213 Iowa 1251, 239 N.W. 36.

It is apparent here plaintiff, while inquiring as to a possible ground of peremptory challenge, was careful not to offend against the rule which makes the subject of insurance improper matter to be considered by the jury. There is no evidence here of bad faith or of a desire to capitalize on the insurance question.

IV. One other assigned error demands our attention. In the instruction on contributory negligence the jury was told that if decedent "was guilty of any act of negligence that contributed in any way or to any degree directly to the damage complained of" the plaintiff could not recover.

The criticism is made that the instruction did not include "any *omission* to act" and confined the jury to finding contributory negligence arising only out of "any *act* of negligence." It is argued the instruction was inconsistent with the earlier general one which explained that negligence "may consist either in *doing* something which a person of ordinary care and prudence would not have done, or in *omitting to do* something which an ordinarily careful and prudent person would have done under the same or similar circumstances." (Italic supplied.)

The earlier instruction, however, identified "contributory negligence" with the definition of negligence (just quoted) and

stated: "Where any person, by his own negligence or want of ordinary care, contributes in any way or to any degree to his injury, such person is not allowed to recover * * *."

It is frequently said that in determining the sufficiency of an instruction the instructions as a whole must be considered. See Burwell v. Siddens, 238 Iowa 645, 647, 25 N.W. 2d 864, and cases cited. Where one instruction standing alone is technically insufficient or improper recourse, in a proper case, may be had to other instructions in order to determine whether prejudice may be presumed to have resulted from the technical insufficiency. Smith v. Pine, 234 Iowa 256, 260, 261, 12 N.W. 2d 236; McSpadden v. Axmear, 191 Iowa 547, 553, 181 N.W. 4; Engle v. Nelson, 220 Iowa 771, 780, 781, 263 N.W. 505.

Applying these rules we think it clear the jury could not have been misled by the particular instruction complained of. Citations might be multiplied but the cases already cited adequately cover the point. A consideration of the entire record reveals no reversible error in any of the particulars pointed out. It follows the decision of the trial court must be affirmed.—Affirmed.

All JUSTICES concur.