Wood, J., concurred in the dissenting opinion.

----

## WOOD *v.* KEITH.

### Opinion delivered April 20, 1895.

1.  *Circuit judge should not act as counsel.*
    Under sec. 25, art. 7, Const. 1874, which provides that "the judges of the Supreme, circuit or chancery courts shall not, during their continuance in office, practice law or appear as counsel in any court, State or Federal, in this State," the appearance of a circuit judge as counsel for a party in a cause wherein he was disqualified as judge by reason of having been retained as counsel before he was elected judge is error for which the opposite party is entitled a to reversal, both because such appearance is against public policy, and because it cannot be said that the party complaining has had an impartial trial of his cause.

2.  *Sale by insolvent—Purchaser's liability to creditors.*
    A purchase of goods by a creditor from an insolvent debtor for a fair price, in payment of a *bona fide* debt, and to the extent merely of satisfying that debt, is not rendered invalid by the purchaser's knowledge of his debtor's intention to defraud other creditors, if the purchaser does not participate in such fraudulent design.

Appeal from Franklin Circuit Court, Ozark District.

J. VIRGIL BOURLAND, Special Judge.

#### STATEMENT BY THE COURT.

The plaintiff, J. A. Keith, filed his complaint in replevin, in the Logan circuit court, against the defendant, O. C. Wood, as sheriff, and his deputy, for the recovery of a stock of goods held by the defendant sheriff under

and by virtue of a writ of attachment issued out of said circuit court in a cause wherein the defendant, Townsly-Myrick Dry Goods Company, was plaintiff, and one A. J. Burke was defendant; the plaintiff claiming to be the owner of said stock of goods by virtue of a purchase theretofore made from the said A. J. Burke, the owner thereof at the time of said purchase from him.

The said Townsly-Myrick Dry Goods Company petitioned to be made a party defendant, and, it being the real party in interest, its petition was granted. The defendants, then applied for a change of venue, and the same was changed to the Ozark district of Franklin county; and defendants answered, admitting the value of the goods in controversy to be $1,342.12, and that they were levied on as the property of said A. J. Burke in the attachment proceedings aforesaid; and also that other and junior writs of attachment, at the instance of Isaacson & Davis, were issued out of the Scott county circuit court, and levied on the stock of goods aforesaid. The defendants denied and put in issue the plaintiff's ownership of said goods, and this constitutes the controversy herein, except as to matters of procedure.

The regular judge, the Hon. J. H. Evans, being disqualified to hear and determine the cause, by reason of having been of counsel for the plaintiff before his election to the office of circuit judge, J. V. Bourland, Esq., one of the regular practicing attorneys of that court, was duly elected to preside in the trial of this cause, and before him, as special judge, the trial progressed to judgment.

It appears from the record that the regular judge, the Hon. J. H. Evans aforesaid, when both parties had announced ready for trial, appeared as counsel for the plaintiff, assisting in selecting the jury, examining the witnesses, and opening and concluding the argument for the plaintiff to the jury, and generally managing and

conducting the cause for plaintiff, as senior counsel, the Hon. A. S. McKennon being associated with him as junior counsel, and also present and assisting in the cause.

There was proof tending to show the *bona fide* character of the debt from Burke to Keith, and also of the sale of the former to the latter in satisfaction of said debt, and that the price given for the goods was reasonable. On the other hand, there was evidence tending to show that the existence of the debt from Burke to Keith was concealed from Burke's other creditors, and that they both acted in a manner calculated to mislead the other creditors, to put them off their guard, and to induce them to forego the assertion of present rights. But the foregoing is sufficient for present purposes.

Verdict and judgment for plaintiff. Exceptions taken, and appeal by defendants.

*Jos. M. Hill* for appellants. *Anthony Hall* and *Ed. H. Mathes* of counsel.

1. It is reversible error for a regular circuit judge to appear as counsel, over the objection of a party to the suit. Art. 7, sec. 25, Const; 28 N. E. 923; 40 N. W. 473; 72 Minn. 367; 24 Mich. 243; 44 *id.* 290; 6 N. W. 671; Fitnam's, Tr. Proc. sec. 49; 38 Ill. App. 441; 84 Am. Dec. 126–133. The provision of our constitution is mandatory. 47 Ark. 407; 51 *id.* 177.

2. The testimony offered to show that Burke had other assets out of which he could have paid Keith, that Keith knew of the same, that the transfer was not for the sole purpose of paying him, but to transfer his property so as to defraud his creditors, was admissible. 59 Ark. 303; 23 *id.* 258; 39 N. W. 219; *Ib.* 820; 11 So. 761; 23 S. W. 92; 37 Pac. 128; 16 S. E. 914; 6 So. 273; 8 Am. & Eng. Enc. Law, p. 769.

3.   The declarations of Burke, after the sale, that his creditors could now whistle for their money, and the evidence that Keith had no property in his own name at the time of the creation of the alleged debt, should have been admitted.   59 Ark. 303.

4.   The admission of the mortgage on the merchandise, and the refusal to give instuction five are manifest errors.

5.   It was error for the court to express its views upon the weight of Kennard's testimony.   Thompson on Trials, sec. 219.

6.   The court should have given instructions seven and eight, on the subject of estoppel.   33 Ark. 468 ; 39 *id.* 139 ; 2 Herm. Estoppel, sec. 788 ; Bigelow on Estoppel, p. 638 *et seq.*   See also 2 Herm. Estoppel, sec. 794, and cases cited in note 7.

*Edwin Hiner* for appellee.

1.   It is not a violation of the *spirit* of our constitution, for a judge to appear who was retained and paid his fee prior to his election as judge.   The constitution is merely directory.

2.   59 Ark. 303, relied on by appellants, presents an altogether different state of facts.   This court notes the distinction between a sale to pay a *bona fide* debt and a stranger purchasing property from a fraudulent seller. 23 Ark. 258 ; see also 31 Ark. 666 ; 39 *id.* 571.

3.   The mortgage was competent to show a *bona fide* debt.

4.   Refused instructions one and two are elementary propositions, but those given fully explained to the jury the law of the case.   Refused instruction six was properly refused because appellee could maintain the suit whether the note belonged to him or M. A. Keith.   48 Ark. 355.

5. The instructions on the subject of estoppel were correct. 33 Ark. 465; 54 *id.* 465; 98 Mich. 591.

BUNN, C. J. (after stating the facts.) The first question that confronts us in this case is that raised by the appearance of the regular circuit judge as counsel for plaintiff, and the overruling of defendant's objection to the same by the court. Section 25, article 7, of the constitution is in these words, to-wit: "The judges of the Supreme, circuit or chancery courts shall not, during their continuance in office, practice law or appear as counsel in any court, State or Federal, within this State." It is contended by the appellee's counsel in argument that the provision of the constitution just quoted is directory merely, and not mandatory, and that, therefore, if no error is found otherwise, the case should not be reversed on that account. They contend and say: "We feel no doubt at all but that it would be a violation of the constitution, both in letter and spirit, for any judge of the class prohibited by the constitution from practicing law to accept a retainer after his election as judge. But in a case like the one at bar, where a lawyer has received pay from his client for his services prior to his election as judge, we think it is no violation of the spirit of the law, if it is of the letter, to continue his services." This quotation serves to show the reasoning of appellee's counsel against the soundness of appellant's contention, and it contains an admission that it may be against the letter of the law for a judge to practice law.

In order to arrive at a correct understanding of the meaning of the constitutional prohibition, we are privileged to inquire as to the nature and character of the evils and abuses it was intended to prevent. If the contention of the appellee be sound, then the appearance of the judge as counsel in a court is not *per se* wrong, but

1. Judge should not act as counsel.

may be wrong according as injury has resulted therefrom in the particular case. A sufficient answer to such a proposition is that such would be the effect of the law, even in the absence of a constitutional provision.

It is apparent that one of the objects of the adopting of the constitutional provision was to separate the judge, personally as well as officially, from all that manner of life so calculated to destroy impartiality of judgment and balance of temper which may, and sometimes does, influence the lawyer. But this appertains altogether to the interest of the public, and, if it were all, it could scarcely be considered a ground of the reversal of a judgment rendered in favor of one and against another individual.

But this, we think, is not all of it, but, as contended by appellant's counsel, the known official position of the judge, and, be it said to the credit of this official class, the general confidence reposed in the *personnel* of the judges by the masses is such as to make their words and actions of far greater weight than the words and acts of men occupying the merely private or professional station. This idea is aptly expressed by Judge Cooley in delivering the opinion of the Supreme Court of Michigan in *Bashford* v. *People*, 24 Mich. 244, where he says: "It is quite true that official position could not have any tendency to render the opinions or arguments of counsel intrinsically any more sound or plausible, but when they were to be addressed to a jury whose members were accustomed to receive and obey the instructions of the counsel as a judge, it is not unreasonable to suppose that that circumstance may insensibly, in their minds, have given to them additional force and influence. Such an influence even the best juror would have found it difficult sufficiently to be on the guard against; quite as difficult, perhaps, as they would to throw off or lay aside such preconceived opinions of the merits of the case as

would have disqualified them as jurors. It cannot be said, therefore, that this is a matter of indifference to the person on trial."

It is altogether easily to be conceived that some such reasoning was in the minds of the makers of the constitution when they framed that instrument, and of the people of the State when they adopted it. We think any other theory would be a most dangerous one to approve and put in practice.

In the same opinion of Judge Cooley as that just quoted from, he says, in concluding his argument on the subject: "We have no doubt that whatever connected with a trial is forbidden on grounds of public policy, the party concerned may except to; and that he has the same right to insist upon his exception when it has reference to the breach of a rule presented for the direction of the highest officer of justice, as of one for the lowest. The correctness of motive, the high standing and upright character of the officer concerned, cannot be considered on such an exception, and consequently be an answer to it."

There can scarcely be any serious contention that public policy does not forbid the judge to practice law, and appear in court as counsel for contending litigants, and if this be true, on this ground also, according to the principle laid down by the learned judge from whom we quote, the judgment in the case ought to be reversed. The truth is, under such circumstances, we cannot say that the party complaining has had a fair and impartial trial of his cause, but, on the contrary, the conclusion is almost irresistible that the opposite side has been favored with an influence he was not entitled to in a court of justice.

The second contention of appellants is to the effect that the court erred in refusing testimony offered by appellants to show that "Burke had other assets out of

2. Liability of one purchasing from an insolvent.

which he could have paid Keith; that Keith knew of the same; that the transfer to Keith was not for the sole purpose of paying him, but to transfer his property so as to defraud his creditors." It is sufficient to say that any evidence, otherwise admissible, which would tend to show the participation of Keith in the accomplishment of the fraudulent design of Burke, if such he had, should have been admitted, as was held in the case of *Hiner* v. *Hawkins*, 59 Ark. 303, and in *Bryant* v. *Fink*, 39 N. W. 820, cited by appellant's counsel. But to offer to prove that Burke had other assets than those included in his sale to Keith, or that Keith knew of the same, of itself, furnished no grounds upon which to hold the sale fraudulent. If, however, Keith had any other purpose in purchasing from Burke than that of saving his own *bona fide* debt (if such it was), and *that* other purpose was to assist Burke in defrauding his other creditors, his purchase was invalid, notwithstanding his debts may have been *bona fide*, and one of his objects in making the purchase was to save the same.

The instructions given by the court contained some inaccurate statements, but they are not so material as to be grounds for reversal. The first instruction asked by appellants and refused by the court is somewhat misleading, because, while this is a case of replevin, and in such cases plaintiff must recover on the strength of his own, and not on the weakness of his adversary's, title, yet, when the plaintiff has shown that he was a purchaser from the undisputed owner, he had made such a *prima facie* case as made it incumbent on his adversary to prove his sale invalid. But this idea seems to have been suggested in the second refused instruction. In the third refused instruction the fact that Keith knew of the fraudulent design of Burke is made a ground of attack upon his purchase of the goods. Such is not the law. Keith's knowledge on the subject was not material.

Only his acts affected the transaction as to him.   One creditor may purchase the goods of an insolvent or failing debtor in satisfaction of his debt, and it matters not whether or not he knows the fraudulent intent of the debtor as to other creditors, so that the purchasing creditor does not aid him in defrauding his other creditors. But the purchasing creditor must have a *bona fide* debt, must purchase the goods at a fair price, and to the extent only of satisfying his debt, unless necessity compels a purchase of more than a mere sufficiency.   This statement of the law, it is hoped, will prove a sufficient guide for instructions in another trial.

For the error indicated, the judgment is reversed, and the case is remanded.