LEE DICKSON v. STATE.

No. A-9600. Sept. 22, 1939.

(94 P. 2d 258.)

A. O. Manning, of Fairview, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DAVENPORT, J. There was filed in the county court of Alfalfa county, Okla., an information charging Lee Dickson with transporting spirituous and intoxicating liquor, to wit: about one pint of whisky, from a point or place unknown to your informant, to other points or places unknown to your informant, about three-quarters of a mile northwest of the town of Ingersoll, Okla. The defendant was convicted by the jury, and his punishment left to be fixed by the court. He was sentenced by the court to pay a fine of $50 and to be imprisoned in the county jail for 30 days. From this judgment and sentence, the defendant Lee Dickson has appealed.

Before the case was called for trial, on the 5th day of December, 1938, the defendant Lee Dickson filed his

application to disqualify the county judge, Loyd W. Hadwiger, county judge of Alfalfa county, for the reason that the judge was a material witness in the case. On the 5th day of December, 1938, the said Judge Loyd W. Hadwiger filed his certificate of disqualification, for the reason that he and his family were material witnesses in the case. On the said 5th day of December, 1938, the county attorney, representing the state, and H. W. Wright, attorney at law representing the defendant, agreed that J. Wilford Hill be appointed special judge to act in the trial of the case. On the 6th day of December, 1938, the said J. Wilford Hill filed his oath as special judge to preside in the case of State v. Lee Dickson, No. 2342. On the 13th day of December, 1938, the defendant, by his attorney, A. O. Manning, asked permission to withdraw his plea of not guilty heretofore entered, for the purpose of filing a demurrer, which application of the defendant was granted; and the defendant filed his demurrer, in which he alleged that the said information is insufficient to charge the defendant with any public offense against the laws of the state of Oklahoma, and that the allegations therein contained are vague, indefinite, and uncertain, and wholly insufficient to charge the commission of any public offense against the laws of the state of Oklahoma; which demurrer by the court on the 13th day of December, 1938, overruled; and the defendant duly excepted.

The case was assigned for trial December 13, 1938; and on said date both parties having announced ready for trial, by and through their respective counsel, a jury of six men was sworn to try the issues joined and a true verdict render according to the law and evidence.

The defendant then filed the following motion:

"Comes now the defendant Lee Dickson, in case No. 2342, and objects to the County Judge Loyd W. Hadwiger qualifying the jury, and as reason and grounds therefor, and states that the duly elected and qualified judge is a

material witness against the defendant, and his disqualification has been accepted, and a special judge, J. Wilford Hill of the Alfalfa county bar, has been agreed upon and qualified to sit in the case.

"Comes now the defendant Lee Dickson, and objects to the entire selection of the jury at this time, and as reason and grounds therefor, states that the said jury has been heretofore selected and called by the duly elected county judge, and objects to the county judge, Loyd W. Hadwiger, who is a material witness against this defendant in this case, qualifying said jury, which is highly prejudicial to the said defendant and his regular rights in said cause," which was overruled by the court and exception saved.

If the facts stated in the motion of the defendant are true that Judge Loyd W. Hadwiger, who had disqualified to try the case, took part in calling, selecting, and qualifying said jury to sit in the trial of the defendant's case, which objection is not disputed by the state, the defendant did not have that fair and impartial trial as guaranteed to him by the Constitution and laws of this state.

When Judge Loyd W. Hadwiger certified his disqualification to sit in the trial of this case, his jurisdiction as a trial judge then ceased. After his disqualifications were certified, any act or any part he took in selecting, qualifying, or examining the jurors to sit in the trial of the case was without authority of law, and deprived the defendant of a fair and impartial trial, and entitles the defendant to a reversal.

We have been unable to find a case where a judge disqualified on the ground of being a witness, and took any part in the trial after he had filed his certificate of disqualification; but we hold that the same principle would bind the judge, when he disqualified, on the grounds that he was a witness in the case, as the courts hold a judge who disqualifies to sit in the trial of a case, and then takes part in the trial of the case, where he has

impaneled the jury, and examined them as to their qualifications to sit as jurors.

In Lilly v. State, 7 Okla. Cr. 284, 123 P. 575, Ann. Cas. 1914B, 443, this court, in the second paragraph of the syllabus, stated:

"When a judge of a court of record vacates the bench and prosecutes a person charged with crime in the court over which he presides and before a jury drawn and impaneled by him, a judgment of conviction had under such circumstances will be reversed."

In the body of the opinion the court cites with approval a decision of the Supreme Court of Florida in the case of Perry et al. v. Bush, 46 Fla. 242, 224, 35 So. 225, 226, and states:

"The doctrine announced by the Supreme Court of Florida, in the case of Perry et al. v. Bush, supra, appeals to us as being a sound exposition of the law * * *."

Again quoting from Lilly v. State, supra, the court says:

"It is sufficient to say that no conviction secured in the courts of this state, wherein the resident district judge has vacated the bench and become a special prosecuting attorney before a jury which was drawn and impaneled under his direction, and which has been accustomed to receive instructions and determine litigated questions before him, will be permitted to stand in this jurisdiction."

In Roddie v. State, 19 Okla. Cr. 63, 198 P. 342, 343, in the ninth paragraph of the syllabus the court stated:

"Under the statutes of this state an attorney at law, who holds a commission as judge of any court of record in this state, is prohibited from practicing law as an attorney, counselor, or advocate in any of the state courts so long as he occupies such official position."

In Knight v. State, 49 Okla. Cr. 123, 295 P. 409, in the second paragraph of the syllabus, the court said:

"When the judge of a court of record disqualifies in a criminal case, and on the part of the prosecution participates in the trial, a judgment of conviction will be reversed on the ground that the defendant did not have a fair and impartial trial."

In Knight v. State, supra, the district judge of the district, P. L. Gassaway, living at Coalgate, Coal county, Okla., certified his disqualification; and when the case went to trial, took part in and assisted in the prosecution.

Section 4199, O. S. 1931, 5 Okla. St. Ann. § 1, is as follows:

"No person shall practice as an attorney and counselor at law in any court of this state who is not a citizen of the United States, or who holds a commission as judge of any court of record, or who is a sheriff, coroner, or deputy sheriff; nor shall the clerk of the Supreme Court or the clerk of the district court, or probate court, or the deputy of either, practice in the particular court of which he is clerk or deputy clerk; but nothing herein contained shall prevent any judge of any of the courts of this state from finishing any business by him undertaken in the district, circuit, or Supreme Court of the United States, prior to his election or appointment as judge; and an alien who has declared his intention to become a citizen of the United States may practice as if he were a citizen."

By the provisions of the statute, the law aims, as far as possible, to give the accused a trial that should not only be fair, but free as may be from any suspicion, or partiality, or undue influence.

In order to arrive at a correct understanding of the meaning of the statute prohibiting the judge of any court of record from practicing law in this state, we are privileged to inquire as to the nature and character of the evils it was intended to prevent. It is apparent that one of the objects of the adoption of the statute was to separate the judge personally, as well as officially, from all that manner of life so calculated to destroy im-

partiality of judgment and balance of temper which may, and does sometimes, influence the lawyer. But this does not appertain altogether to the interest of the public, and, if it were all, it could scarcely be considered grounds for a reversal of the judgment against the defendant; but this we think is not all of it; but, as contended by the defendant's counsel, the known official position of the judge, and the general confidence reposed in the judge by the masses, is such as to make his words and actions of far greater weight than the words of men occupying a merely private or professional situation.

It is quite true the official position would not have any tendency to render the opinions or argument of counsel intrinsically any more sound or plausible; but when they were addressed to the jury, or the jury saw the interest the regular judge was taking in the trial of the case on behalf of the state, whose members were accustomed to receiving and obeying the instructions of the judge, it is not unreasonable to suppose that circumstances may, insensibly in the minds, have given to them additional force and influence. Such an influence even the best juror would have found it sufficiently difficult to guard against; and quite as difficult, perhaps, as they would to throw off or lay aside such preconceived opinions of the merits of the case as would have disqualified them as jurors. We cannot say that this is a matter of indifference to the person on trial. It is altogether easily to be conceived that the same thoughts were reasonably in the minds of the framers of the statute. We think that any other theory would be a dangerous one to approve and put into practice. We have no doubt that whatever connection with the trial is forbidden by the statute on the ground of public policy, the party concerned may except to; and that he has the right to insist upon his exception, where it has reference to a breach of a statute enacted for the direction of the highest officer of justice as of one for the lowest; the correctness of the

motive, high standing, and upright character of the officer concerned cannot be considered on such an exception, and consequently be an answer to it. There can scarcely be any doubt that public policy forbids a judge to practice law, or to assist, or counsel, to appear, or take part in any way in the trial of a case. The impropriety of a judge leaving the bench and appearing as counsel in a criminal case on trial in his own court, or aiding, suggesting, or advising counsel in charge of the prosecution, is perfectly apparent, and could not do otherwise than prejudice the substantial rights of the defendant. A similar question to the one in this case was in Roddie v. State, supra, and in Lilly v. State, supra.

The judge, when he certified his disqualification to try this case, was still the county judge of the county in which the case was to be tried; and he had been presiding over the county court for sometime. The jurors were accustomed to being in his court, and seeing him preside in cases tried in his county. The judge was, also, the main witness in this case; and any action upon his part in qualifying the jurors, selecting them, or in any manner whatever taking part in the qualification or selection of the jurors to try the charge, was prejudicial to the defendant, and deprived him of a fair and impartial trial.

For the reasons herein stated, the judgment of the trial court is therefore reversed, and a new trial awarded.

DOYLE, P. J., and BAREFOOT, J., concur.