Argued October 20, 1948; affirmed February 8;
rehearing denied March 15, 1949

STATE *v.* NAGEL
202 P. (2d) 640

*George Mowry*, of Portland, argued the cause for Appellant. With him on the brief was John Mowry, of Portland.

*Clarence A. Humble*, District Attorney, of Klamath Falls, argued the cause for respondent. With him on the brief was J. Hawkins Napier, Deputy District Attorney, of Klamath Falls.

Before ROSSMAN*, Chief Justice, and LUSK, BELT, KELLY, BAILEY and HAY, Justices.

LUSK, C. J. †

On May 20, 1947, the grand jury of Klamath County returned an indictment charging the defendant William

---

\* Chief Justice when this case was argued.
† Chief Justice when this opinion was rendered.

Henry Nagel with the crime of contributing to the delinquency of a minor. The charging part of the indictment is as follows:

"The said WILLIAM HENRY NAGEL on the 11th day of May A. D. 1947 in the said County of Klamath and State of Oregon, then and there being, and Cecile Vandenberg then and there being an unmarried female child under the age of 18 years, the said William Henry Nagel did then and there unlawfully, and wilfully and feloniously do an act, to-wit: expose and manipulate his private parts in the presence and open view of said Cecile Vandenberg, which said act did manifestly then and there tend to cause said Cecile Vandenberg to become a delinquent child; contrary to the statutes * * *"

Cecile Vandenberg is the daughter of the Hon. David R. Vandenberg, then and now circuit judge of the Thirteenth Judicial District, Klamath County, Oregon. At the time of the commission of the alleged offense, May 11, 1947, Cecile was ten years of age. Upon the indictment being reported to him on May 20, 1947, Judge Vandenberg endorsed upon it an order fixing the defendant's bail at $2,500.00. On the same day he disqualified himself to act as judge in the case and requested the chief justice of this court to assign another circuit judge to act in his place, and the chief justice, on May 21, 1947, designated the Hon. Orval J. Millard, circuit judge for the First Judicial District, to hear the case. Thereafter, all the proceedings in the case were before Judge Millard.

The defendant entered a plea of not guilty on July 12, 1947. His trial commenced on September 17, 1947, at the June term of court, before Judge Millard and a

jury. The jury returned a verdict of guilty, and the court sentenced the defendant to serve a maximum term of two years in the penitentiary. This appeal is from the judgment of conviction.

The first six assignments of error are directed to the court's orders denying various motions for a change of venue made by the defendant. It is contended that the defendant had a statutory right to a change of venue, and that, under the circumstances of this case, it was an invasion of defendant's constitutional rights to deny these motions and compel him to stand trial in Klamath County; specifically, that he has been deprived of his liberty without due process of law and of the equal protection of the laws, in violation of Section 1 of the Fourteenth Amendment of the Constitution of the United States, and has been denied the right to a trial by an impartial jury guaranteed by Art. I, § 11, of the Constitution of the State of Oregon.

The facts relied upon to support these claims are the following: Judge Vandenberg, who has twice been elected to the office of circuit judge for Klamath County, swore to the information of felony upon which the defendant was arrested. He, with one other, A. R. Brandt, the official court reporter, was a witness before the grand jury which returned the indictment. His name as such witness is endorsed on the indictment, and, as stated, he received the indictment and fixed the defendant's bail. He was to be, and, as it turned out, was in fact a material witness for the state at the trial. The jury panel from which a portion of the jury was selected to try the defendant was drawn on May 27, 1947, to serve for the June term, commencing June 16. On that day Judge Vandenberg excused seven jurors from service; on June 19 he excused two; on June 27 two; on July 1 seven; and on

August 1 one, a total of nineteen out of thirty-one jurors orignially drawn. On June 26 Judge Vandenberg ordered that eleven additional jurors be drawn to fill the panel and to report on June 30.

On July 12, after pleading to the indictment, the defendant filed his motion for a change of venue supported by his own affidavit, which recited the above facts (so far as they had occurred up to that time) and further averred that on May 11, 1947, the day of the commission of the alleged offense, Judge Vandenberg violently assaulted the defendant, called him profane and obscene names, and threatened to kill him.

In opposition to the motion for change of venue the state filed the affidavits of four persons, to wit, the county judge of Klamath County, the chief of police of Klamath Falls, the chief criminal deputy for the sheriff's office in Klamath County, and the district attorney of Klamath County. The affidavits of the first three are to the effect that each of the affiants comes in contact with a great many people in the city of Klamath Falls and had heard considerable discussion of the case, but had never heard any opinion expressed indicating any feeling against the defendant, and that, in the opinion of each of the affiants, the defendant would receive a fair and impartial trial in Klamath County. The affidavit of the district attorney is, in substance, that he had lived and practiced law in Klamath County for a period of approximately seventeen years and that the case had caused no greater general interest among the citizens of the county than any other alleged crime; that there were no unusual circumstances with regard to the alleged crime; no unusual attitude of the citizens; that nothing had occurred which would indicate a vindictive attitude on

the part of the citizens of the county toward the defendant; that the defendant could receive a fair and impartial trial within the county, and that a fair and impartial jury could be readily and easily obtained.

After argument before Judge Millard on July 26 the motion for change of venue was denied.

On September 16, the day before the case was to be tried, the defendant renewed his motion for a change of venue, and, in the alternative, moved for a dismissal of the action on the ground that if the former motion were to be denied the court would be without jurisdiction of the cause. By these motions and a supporting affidavit the excusing of jurors by Judge Vandenberg subsequent to the filing of the original motion was shown, and it was further averred that of the "twenty-one (21) jurors now remaining upon said June, 1947 panel, * * * sixteen (16) * * * have heretofore served and acted as jurors in said Court, during the present term of said Court, in trials over which said Judge Vandenberg has presided"; that the entire jury list of Klamath County for the year 1947 comprised approximately 498 persons, and that many of these not on the June, 1947, panel "would be found to have served and acted as jurors in said Court, in previous years, in trials over which said Judge Vandenberg had presided", and that the defendant believed if the trial were in Klamath County there would "inevitably be on the jury a substantial number of jurors who at sometime or other had appeared in said Court before said Judge Vandenberg as either jurors or witnesses". The defendant also averred: "I * * * believe that he has been very active in this prosecution and that he will be efficient and active in rendering counsel and assistance to the side of the prosecution

if the said cause is tried in said Klamath County''. For these and the other reasons stated in the original motion, the defendant swore that ''a fair and impartial trial of said cause \* \* \* cannot be had in said County of Klamath, \* \* \* whether upon a regular or any other panel or special venire''.

These motions were presented to the court on September 17 when the case was called for trial, and were denied. In the course of his argument thereon counsel for the defendant made this statement with reference to the orders of Judge Vandenberg excusing jurors:

''\* \* \* We are faced with the question of either being compelled to go to trial before a jury that has been thus cut to pieces by the father of the girl named in the indictment, or else we are put to the matter of choosing some other alternative.''

When the business of selecting a jury was commenced counsel for the defendant announced:

''We are not going to question, we are not going to challenge a single juror. We consider this is a void, invalid, unconstitutional trial, and we are not going to be put in a position of accepting any of these jurors.''

Counsel for the defendant adhered to the position thus stated throughout the examination and qualification of the jury. The entire examination was conducted by the prosecuting attorney and the court. In all, twenty-five jurors were called into the jury box, four of these being members of a special venire summoned before the jury was completed. Thirteen prospective jurors, who testified that they knew Judge Vandenberg and also that they had formed an opinion about the case which it would take evidence to remove, or that they could not be fair or impartial, were excused

by the court. In each instance of that kind the prosecuting attorney submitted the matter to the court. As typical of the procedure we quote from the examination of S. R. Balsiger:

"Q You have arrived at a conclusion in this case?

"A Being the father of three kids I have my mind made up.

"Q Is that such an opinion that would take evidence to remove?

"A Yes.

"Q Do you feel you could enter upon the trial of this case as a fair and impartial juror?

"A I kind of question it.

"Q We submit the matter for the court's consideration.

"JUDGE MILLARD: Do you wish to submit a challenge?

"MR. MOWRY: We don't.

"JUDGE MILLARD: If the juror feels he can't be fair he will be excused for cause. Call the name of another juror."

Of the twelve jurors finally selected all except two, both members of the special venire, had an acquaintance of some sort with Judge Vandenberg. The nature of this acquaintance was not developed by examination although several jurors spoke of it as "casual".

After the state had accepted the jury, but before they had been sworn, counsel for the defendant in chambers renewed the motion for a change of venue, calling particular attention to the fact that, as he claimed, seven of the jurors had served in the trial of cases over which Judge Vandenberg had presided. In the course of the discussion the following occurred:

"MR. HUMBLE (the district attorney): May I ask a question? Do I understand the defense is

now presenting an objection for cause on account of the jurors having served under Judge Vandenberg?

"MR. MOWRY: No, only that part of our motion for change of venue."

The motion was again denied, the jury were sworn, and the trial proceeded.

Judge Vandenberg was a witness to his daughter's identification of the defendant, to an alleged confession of the defendant, and to other facts relevant to the charge. A more particular statement of his testimony will be made in connection with another assignment of error. It is sufficient to say at this point that he freely admitted on the witness stand some, although not all, of the averments of the defendant's affidavit regarding his actions on the day of the commission of the alleged offense. Generally speaking, his conduct was that of a parent outraged by what he believed to be an indecent affront offered to his young daughter by the defendant.

Our statute with regard to change of venue, § 1-404, O. C. L. A., provides so far as here pertinent:

"The court or judge thereof, may change the place of trial, on the motion of either party to the action, when it appears from the affidavit of such party, or if he is not a resident of the county, the affidavit of any one on his behalf; either, * * *

"(2) That the Judge is a party to, or directly interested in the event of the action, or connected by consanguinity or affinity within the third degree, with the adverse party, or those for whom he prosecutes or defends; or,

"(3) That the judge or the inhabitants of the county are so prejudiced against the party making the motion, that he can not expect an impartial trial before said judge, or in said county as the case may be * * *"

Section 13-603, O. C. L. A., as amended by Ch. 438, Oregon Laws, 1941, reads as follows:

"A judicial officer is a person authorized to act as a judge in a court of justice. Such officer shall not act as such in a court of which he is a member in any of the following cases:

"(1) In an action, suit or proceeding to which he is a party, or in which he is directly interested;

"(2) When he was not present and sitting as a member of the court at the hearing of a matter submitted for its decision;

"(3) When he is related to any party, or to the attorney for any party, or to the partner or office associate of any such attorney, by consanguinity or affinity within the third degree;

"(4) When he has been attorney in the action, suit or proceeding in question for any party.

"But this section does not apply to an application to change the place of trial, or the regulation of the order of business in court. In the cases specified in subdivisions 3 and 4, the disqualification may be waived by the parties, and, except in the supreme court, shall be deemed to be waived, unless an application for a change of the place of trial be made as provided in this code."

Counsel for defendant contend that he had an absolute right to a change of venue under the foregoing provisions. They argue that Cecile Vandenberg was a "party" to the action; that Judge Vandenberg, as her father, was disqualified to act in the case by Subd. (3) of § 13-603; and that where a judge is thus disqualified, the right to a change of venue follows as a matter of course from Subd. (2) of § 1-404.

█ █ We are unable to follow counsel's reasoning in its application to the facts of this case. For the purpose of the argument it may be assumed that Cecile Vandenberg was a "party" to the action. Such a conclu-

sion would seem to be in harmony with the decision of this court in *Straub v. State,* 121 Or. 451, 458, 255 P. 897, that the word "party" in a similar statute should receive a liberal construction and includes "anyone interested in the result of the case". See, also, *Packwood v. State,* 24 Or. 261, 262, 33 P. 674; 48 C. J. S., Judges, 1072, § 85. It may also be assumed, as the defendant contends, that by the provisions of §§ 26-1217 and 26-1218, O. C. L. A., Judge Vandenberg was under a possible pecuniary liability as private prosecutor for the costs and disbursements of the proceeding in the event that the prosecution should be found by the court trying the action to be malicious or without probable cause, and therefore that he was "directly interested in the event of the action" within the meaning of the statutes which we have quoted. But the purpose of these statutes is to enable a party through a change of the place of trial to secure a trial before a judge who is not disqualified. The provision for change of venue can have no possible application to a case like this where the disqualified judge has already stepped aside and another circuit judge is sitting in the case under direction from the chief justice of this court, acting under the authority of § 93-245, O. C. L. A. See, *Paige v. Carroll,* 61 Cal. 215; *Bash v. Evans,* 40 Ind. 256, 262. And, see, *State v. Stilwell,* 100 Or. 637, 198 P. 559.

It is argued, however, that the actions of Judge Vandenberg in receiving the indictment and fixing the defendant's bail, in excusing jurors, and in ordering the summoning of additional jurors to fill up the panel violated the statutory injunctions against a judge acting as such in a case in which he is disqualified, and rendered the trial a nullity.

The statute provides that a judge, related as was Judge Vandenberg to a party to the case, "shall not act as such" (i. e., as a judge) in that case. § 13-603, O. C. L. A., as amended. The prohibition does not apply, however, to "an application to change the place of trial, or the regulation of the order of business in court." The second of these phrases would include, at least, all the ordinary ministerial acts performed by the judge in administering the business of his court, a ministerial act being one that is done "where the law prescribes and defines the act to be performed, with such precision and certainty as to leave nothing to the exercise of discretion, or judgment," in contrast to a judicial act which "involves the exercise of discretion or judgment in determining whether the duty exists." *King v. Wise,* (Tex. Civ. App.) 1 S. W. (2d) 732. And see, 27 C. J. S., Discretion, 135. The act of Judge Vandenberg in receiving the indictment was a ministerial act and not forbidden by the statute. *Koll v. State,* 143 Tex. Crim. Rep. 104, 157 S. W. (2d) 377; *Cock v. State,* 8 Tex. App. 659; *State v. Millsap,* 310 Mo. 500, 276 S. W. 625; *State v. Goddard,* 162 Mo. 198, 62 S. W. 697. We think that fixing the defendant's bail was a judicial act involving the exercise of discretion. It may have been a void or at least a voidable act. 30 Am. Jur., Judges, 802, § 97. But it has not been argued, and we do not see how it could be maintained, that this act could in any way have influenced the trial or prejudiced the defendant's rights. Orders excusing jurors likewise involve the exercise of discretion, but the orders now in question were not made in this case nor in any case. *People v. Ah Lee Doon,* 97 Cal. 171, 31 P. 933. They were a part of the routine business of the court. Judge Vandenberg had nothing to do with the selection of the persons who

made up the original June panel or of the eleven who were later summoned when the panel became depleted. By § 14-304, O. C. L. A., the original panel of thirty-one jurors (§ 14-302, O. C. L. A.) was required to be drawn by the county clerk with the assistance of the sheriff or a justice of the peace for the county, and by § 14-312, O. C. L. A., the additional number of jurors needed to fill the panel were required to be drawn "in the same manner as the original panel". The order of the court that the panel be filled, if it was anything more than "a regulation of the order of business in court", was not in any event an order made in this case. *People v. Ah Lee Doon,* supra. The jurors were ordered to appear on Monday, June 30, and, like all the other jurors, had the statutory right, on application, to be discharged from further service after serving four weeks. § 14-110, O. C. L. A.

In short, the only act of Judge Vandenberg's which could be even plausibly said to have been done as a judge in this case and, therefore, in contravention of the statute, was his order fixing the defendant's bail, and that act had no bearing on the trial or its fairness.

It is strenuously argued, however, that the defendant could not obtain a fair trial in Klamath County because some of the jurors had previously sat in trials over which Judge Vandenberg had presided. It is said, in effect, that these jurors would be under the influence of Judge Vandenberg to such an extent that they would be unable to give just weight to contradictory testimony of witnesses on behalf of the defendant; that, having been accustomed to following his directions as a judge, they would be equally swayed by his words as a witness.

Going still further, the defendant asserts that it

was impossible for him to receive a fair trial in Klamath County, even before a special venire, in view of the fact that Judge Vandenberg was a witness for the prosecution.

In support of the first of these propositions, the defendant cites certain decisions, which will now be examined.

*Bashford v. The People,* 24 Mich. 244, was a prosecution for manslaughter. The judge of the court called in another judge to try the case and himself took charge of the case as prosecuting attorney. This was held to be a ground of reversal for two reasons: First, the judge violated a Michigan statute which prohibited judges from practicing law; second, public policy forbids the judge of the circuit, who also becomes the prosecutor, to select and call in the judge to sit in his stead.

The defendant relies particularly upon the following language of the opinion which was written for the court by Judge Cooley:

"The law aims, as far as possible, to give every man a trial that shall not only be fair, but as free as may be from any suspicion of partiality or undue influence. It is quite true that official position could not have any tendency to render the opinions or arguments of the counsel intrinsically any more sound or plausible, but when they were to be addressed to a jury whose members were accustomed to receive and obey the instructions of the counsel as a judge, it is not unreasonable to suppose that that circumstance may insensibly, in their minds, have given to them additional force and influence. Such an influence, even the best jurors would have found it difficult sufficiently to be on the guard against; quite as difficult, perhaps, as they would to throw off or lay aside such pre-

conceived opinions of the merits of the case as would have disqualified them as jurors. It cannot be said therefore, that this is a matter of indifference to the person on trial.''

It should be noted that the foregoing statements were made as an answer to the argument of the attorney general that the concededly illegal conduct of the judge in acting as prosecutor ''could not injure the prisoner, inasmuch as, in legal contemplation, it could make no difference to him whether he was prosecuted by one counsel or by another.''

█ The facts of the Bashford case are radically different from the facts with which we are now dealing. We do not have here the spectacle of the judge appearing in the role of prosecuting attorney nor of the judge-prosecutor selecting the judge to preside at the trial. There is no evidence whatever to support the charge in the motion for change of venue that Judge Vandenberg rendered counsel and assistance to the prosecution's side of the case. Judge Vandenberg violated no law nor any rule of judicial propriety when he testified as a witness for the prosecution. He could have been compelled thus to testify. As a witness he was accorded exactly the same treatment as any other witness. At the beginning of the trial the court made a rule excluding the witnesses from the courtroom, and Judge Vandenberg was subject to that rule. He was examined and cross-examined like other witnesses. Objections were made to questions propounded to him, and in one important particular sustained. The language of Judge Cooley, so much relied on by counsel for the defendant about the ''force and influence'' of ''opinions or arguments * * * addressed to a jury whose members were accustomed to receive

and obey the instructions of the counsel as a judge'',
cannot properly be lifted from its context and applied
to the case of a judge appearing, not as counsel, but
solely as a witness, as he had a legal and moral right
to do, and who expressed no opinions and made no
arguments—nor would he have been permitted to do
so—but merely testified to facts within his own knowl-
edge.

It is, however, asserted in the defendant's brief
that ''in his own courtroom, in a criminal trial, the
disqualified regular Judge of a Court of record,
whether he appeared as a prosecuting attorney, or
whether he appeared as the chief prosecuting witness,
would be occupying, in either capacity, practically the
same and identical position''. For this proposition
counsel cite *Dickson v. State,* 67 Okla. Cr. 365, 94 P.
(2d) 258. This case is far from sustaining their posi-
tion because, as the opinion shows, the disqualified
judge ''took part in calling, selecting, and qualifying
(the) jury to sit in the trial of the defendant's case''.
The concluding paragraph of the opinion reads:

> ''The judge, when he certified his disqualifica-
> tion to try this case, was still the county judge
> of the county in which the case was to be tried;
> and he had been presiding over the county court
> for some time. The jurors were accustomed to
> being in his court, and seeing him preside in cases
> tried in his county. The judge was, also, the main
> witness in this case; and any action upon his part
> in qualifying the jurors, selecting them, or in any
> manner whatever taking part in the qualification
> or selection of the jurors to try the charge, was
> prejudicial to the defendant, and deprived him of
> a fair and impartial trial.''

If Judge Vandenberg had taken any part in the
qualification or the selection of the jurors to try the

defendant we would reverse this conviction without any hesitation. As he did not do so, the decision in *Dickson v. State,* supra, is not in point.

Several other Oklahoma cases relied on by the defendant come no nearer the point. They are all criminal cases in which the disqualified judge actively aided the prosecution and was held to have violated the statute which forbids a judge to practice law. *Knight v. State,* 49 Okla. Cr. 123, 295 P. 409; *Roddie v. State,* 19 Okla. Cr. 63, 198 P. 342; *Lilly v. State,* 7 Okla. Cr. 284, 123 P. 575, Ann. Cas. 1914B 443. Cases from other jurisdictions cited by the defendant for the most part turn upon the same question. See *Perry v. Bush,* 46 Fla. 242, 35 So. 225; *Wright v. Boon,* 2 Greene (Ia.) 458; *Wood v. Keith,* 60 Ark. 425, 30 S. W. 756; *Cady, Admr. v. Lang,* 95 Vt. 287, 115 Atl. 140. The case of *State v. Bissell,* 106 Vt. 80, 95, 170 Atl. 102, holds that where one of the judges presiding at a criminal trial was sworn as a witness for the state but did not testify there was no error. The court indicated, however, that he might have testified without prejudicing the defendant's rights by saying: "The law is clear and emphatic that if Judge Ralph had testified in the case it would have been his duty to leave the bench and to take no further judicial part in the trial." *In re Hildreth Estate,* 113 Vt. 26, 28 Atl. (2d) 633, merely holds that a person cannot be a witness and a judge in the same case.

We reject the contention that a judge as a prosecuting witness is not to be distinguished from a judge as a prosecuting attorney for the purpose of a case of this kind. It has no support either in reason or authority. It has been directly held that a judge, disqualified because he had been of counsel, may testify

in the case without offending against the rule which prohibits judges from practicing law (*Beecher v. Long Island R. Co.*, 65 N. Y. S. 642, 53 App. Div. 324); and we have a statute in this state which provides: "The judge himself, or any juror, may be called as a witness by either party, but in the former case it is in the discretion of the court or judge to order the trial to be postponed or suspended, and to take place before another judge." See, § 3-106, O. C. L. A. This statute is applicable in criminal as well as civil cases. *State v. Houghton*, 45 Or. 110, 114, 75 P. 887.

It has been said by this court that there is no authority given a circuit court to change the venue of a case except for causes specified in the statute. *Elliott v. Wallowa County*, 57 Or. 236, 109 P. 130. If that decision were to be applied here it would have to be held that a change of venue was not authorized in this case.

Those portions of the statute providing for a change of venue which are in any way relevant have been quoted above. The place of trial may be changed when the judge is directly interested in the event of the action or connected by consanguinity or affinity within the third degree with the adverse party, or when "the judge or the inhabitants of the county are so prejudiced against the party making the motion, that he cannot expect an impartial trial before said judge, or in said county as the case may be". The provisions regarding a disqualified or prejudiced judge are not applicable for the reasons already given, and there is no charge in any of the motions for a change of venue and the supporting affidavits that the inhabitants of the county were prejudiced against the defendant. In fact, counsel for the defendants expressly

repudiate such a claim, for they say in their brief: "This motion for a change of venue in this particular case * * * is not based upon any such time-worn matters as 'inflammatory newspaper articles' or 'aroused public sentiment' in the particular locality''; that the motion ''has never invoked the discretion of the trial court'', but that the appellant, by the motion, ''has sought and still seeks the protection of certain of the most absolute rights guaranteed by the Constitutions and the statutes under the American system of criminal jurisprudence.''

■ We do not, however, rest our decision on a want of statutory authority to change the place of trial. We assume that common law courts have inherent power, particularly in criminal cases, to order a change of venue for purposes of securing impartial trials, 56 Am. Jur., Venue, 47 § 42; and that, if it is established by the facts shown that it was impossible for the defendant to secure such a trial in Klamath County, then it was the duty of the trial judge to grant a change of venue. If this were not so it would seem that the defendant's rights under both the federal and state constitutions were invaded.

■ We have been cited to no authority which holds that a defendant in a criminal case cannot obtain a fair trial in the district of the disqualified judge who testifies as a witness for the prosecution. It may be that particular jurors, who had served in trials under the judge, would be unduly influenced by that fact. But an *a priori* judgment that any or all of such jurors would be so influenced cannot be pronounced. This was a circumstance into which the defendant's counsel had the right to inquire for the purpose of determining the juror's state of mind. § 5-206 (2), O. C. L. A. It

might be deemed by the trial court a ground of challenge for cause under that section had the point been raised. But counsel for the defendant chose not to examine the jury or to exercise any challenge, either peremptory or for cause, and even expressly declined, as recounted above, when the suggestion was made by the district attorney, to challenge the jurors who had sat in trials over which Judge Vandenberg had presided. Counsel for defendant argue that they pursued this course in order to avoid waiver of their rights by putting themselves in the position of accepting the jury. They cite *Gay v. City of Eugene,* 53 Or. 289, 296, 100 P. 306, which holds that, by accepting a jury selected in a manner different from that provided by a city ordinance, a defendant waives his right to a jury selected in accordance with the ordinance. But waiver cannot be implied from the act of challenging jurors any more than it could be from the vigorous defense made before the jury which was selected. On the other hand, it is the rule that the right to challenge a juror for disqualification is a right which may be waived even in a capital case. 31 Am. Jur., Jury, 645, § 117. It is apparent that the defendant staked everything on his motion for a change of venue even to the extent of expressly refusing to challenge jurors who, in the view of his counsel, were disqualified by some rule of law. Six of the seven—if there were seven— who had sat in trials presided over by Judge Vandenberg could have been got rid of by peremptory challenge. § 26-919, O. C. L. A. It was said by the Supreme Court of the United States in the case of *Frazier v. United States,* — U. S. —, 93 L. ed. 175, 69 S. Ct. 201, 206 (decided December 20, 1948), that the right of peremptory challenge "is given in aid of the party's interest to secure a fair and impartial jury, not for

creating ground to claim partiality which but for its exercise would not exist." Mr. Justice Jackson, in his dissenting opinion in that case, referred to this statement as a hint "that the defendant may have packed this jury against himself."

As though in anticipation of the point and by way of an answer in advance to a possible claim that he had waived his rights of examination of the jury and of challenge both peremptory and for cause, the defendant made the charge, to which we have referred, in his motion for change of venue, that he could not obtain a fair trial from any jury in Klamath County—which had a population of 40,497 in 1940—whether drawn from the general panel or from a special venire. This is a bare assertion wholly unsupported by evidence unless Judge Vandenberg's relation to the case is to be considered as such evidence. We are repeatedly reminded, in some 395 pages of briefs filed by the defendant, of Judge Vandenberg's "prestige" as "the twice successively elected occupant of the highest judicial office" in Klamath County, and likewise repeatedly reminded that he was the complaining witness "with a consequent pecuniary liability", the father of the girl named in the indictment, and, as counsel put it, the "chief prosecuting witness". These are the only facts relied upon to support the assertion that the defendant could not have a fair and impartial trial by *any* jury in Klamath County. We think that they are not enough. It may be conceded that by reason of his official position Judge Vandenberg has a standing in the community above that of many others. He would have such standing to a greater or less degree in any part of Oregon, wherever the case might be tried, for he is a circuit judge of the state, empowered

to hold court in any judicial district, and who, as we judicially know, has held court in many of them. But the general respect and confidence reposed in a particular witness, whether on account of official position or for other reasons, has never, so far as we are aware, been considered a ground for changing the place of trial from the community in which such witness resides. In individual instances, it may be granted, there might be jurors who would consider themselves or would be deemed by the court disqualified either because they knew the witness or knew of him. It is the purpose of the voir dire examination to ascertain who these jurors are, and of the statute allowing challenges for cause to enable the adverse party to remove them from the jury box. But the interest which a witness has in the case certainly adds nothing to his credibility or to the value of his testimony, but rather may count against him. *Officer v. Cummings,* 127 Or. 320, 324, 272 P. 273; 70 C. J., Witnesses, 947, § 1148. We cannot think that a different rule applies to a witness who happens to be a judge; and we may add that Judge Vandenberg was not only an interested witness, but one who displayed before the jury a large measure of animus against the defendant.

We have already held that in excusing jurors and ordering the summoning of additional jurors to fill the panel, Judge Vandenberg violated no statute, but only discharged the ordinary duties of his office. In view of the nature of the attack upon the proceedings, however, we deem it well to pursue the inquiry and determine whether these acts, though legal, were prejudicial to the defendant's rights. In doing so, we bear in mind Judge Cooley's statement in *Bashford v. The People,* supra, that: "The law aims, as far as possible,

to give every man a trial that shall not only be fair, but as free as may be from any suspicion of partiality or undue influence.''

There seem to be but few adjudicated cases where the effect of the action of a disqualified judge with respect to the drawing of a jury panel was considered. In *People v. Ah Lee Doon,* supra, the judge, who was disqualified because he had been district attorney and had filed the information against the defendant, ordered the drawing of a panel of jurors for the session of the court at which the defendant was to be tried and *presided at the drawing* of such jurors. The court held, as above noted, that ''To draw such jury was not a proceeding in this cause, or in any cause, and could not possibly have been a void act merely because this cause, and possibly others in which Judge Angellotti was disqualified, was coming on for trial.'' The court proceeded: ''The fault, if fault there was, consisted in selecting the jury which tried this cause from the panel so drawn.'' The court then said that the objection should have been taken by a challenge to the panel, and, being raised for the first time after verdict, it came too late. (It should be noted that the challenge to the panel is prohibited in Oregon. § 5-202, O. C. L. A.) This cannot be said to be a decision that the act complained of was improper, but, even so, the case is distinguishable because the judge presided at the drawing of the jurors.

In *Salm v. State,* 89 Ala. 56, 8 So. 66, it was held that the disqualified judge erred in entering an order determining the number of special jurors to be drawn and summoned, and in the act of drawing the special jurors. Apparently the jurors were drawn to try the very case in which the judge was disqualified, and the judge participated in drawing them. In *Taylor v.*

*State,* 81 Tex. Cr. R. 359, 195 S. W. 1147, in a murder case the disqualified judge set the case for trial and ordered a special venire of seventy men. The statute defined a special venire as a writ issued by order of the district judge in a capital case, and provided that the names should be drawn by the clerk "in the presence of the judge, in open court". This venire, too, was ordered and selected to try the particular case. The drawing, as stated, was presided over by the judge, and the court held that the act of deciding how many special veniremen should be drawn and the act of presiding in court when the list of men from whom the trial jury is to be selected is drawn "are so intimately associated with the trial of the case, and capable of so potent an influence thereon, that we believe they are among the things which the Constitution forbids a disqualified judge to do when it says he shall not 'sit in the case' ".

*Littrell v. Wilcox,* 11 Mont. 77, 27 P. 394, was a civil case in which the disqualified judge ordered a special venire of twenty jurors. This was what is called an "open" venire, that is, the jurors were not drawn from the bystanders but from the citizens of the body of the county. The judge, however, had nothing to do with the selection of the jurors, but only performed the formal act of ordering the venire to issue. There was a challenge to the panel, which was overruled, the Supreme Court holding that the disqualification of the judge did not extend to mere formal acts. Apparently the venire was ordered for the case in which the judge was disqualified, and, if that be so, the decision goes further than it is necessary to go in this case.

The obvious point of distinction between those cases

and the case at bar is that Judge Vandenberg had nothing to do with the selection of the jurors.

As to orders excusing jurors from the general panel we have been cited to no precedents and have found none. Section 14-110, O. C. L. A., authorizes the court to excuse a person from jury service for various reasons, such as the condition of the person's health, and it has been held that this authority extends to any reason personal to the prospective juror which seems to the judge sufficient. *State v. Savan,* 148 Or. 423, 435, 36 P. (2d) 594, 96 A. L. R. 497. Presumably Judge Vandenberg acted under this authority. The only possible effect of his orders was to deprive the defendant of the opportunity to be tried by the jurors so excused. Even where the question arises in the selection of the jury to try the defendant, it is held that the defendant is not entitled to have a particular juror try his case, but only to a fair and impartial jury. *State v. Savan,* supra. The defendant here had no *right* to the continued service of these excused jurors. On the other hand, they had the right, after four weeks of service, which would have expired, in the case of all of them, before the defendant's trial, to be discharged from further service. § 14-110, O. C. L. A.

In any event, we think that, both in respect of excusing jurors and of summoning additional jurors, the reasons given for holding acts of a disqualified judge prejudicial to a defendant's rights—namely, that they are intimately associated with the trial and capable of a potent influence thereon (*Taylor v. State,* supra)— are not applicable to these entirely lawful and authorized orders made by Judge Vandenberg in the ordinary course of the administration of the business of his court. They did not, in our opinion, impair the integrity of the judicial process in this case, nor

prejudice the defendant's right to a trial by a fair and impartial jury. That being so, the constitutional rights of the defendant were not invaded. At most, the motions for change of venue were addressed to the discretion of the court. *State v. Layton,* 174 Or. 217, 234, 148 P. (2d) 522. We think that their denial did not constitute an abuse of discretion, and that the assignments of error we have been considering ought not to be sustained.

Numerous assignments of error, which may be considered together, are directed to the rulings of the court holding that purported confessions and admissions of the defendant were voluntary and admissible in evidence. These rulings were made after a preliminary investigation without the presence of the jury.

The evidence shows that Cecile Vandenberg's encounter with the defendant occurred on a Sunday afternoon, May 11, 1947, on a street in Klamath Falls about a block from her home. The defendant was wearing an overcoat although it was a hot day. Immediately after the commission of the alleged indecent act Cecile ran home and told her father about it, describing the man's attire. Judge Vandenberg testified that she was white and frightened. He immediately set out in search of the man, and, while so engaged, met an acquaintance, DeLos Mills, who volunteered to continue the search with him in Mills' car. They finally saw a man walking along the street who answered the description given by Cecile and followed him. This man was the defendant. Judge Vandenberg described his actions in the following words:

> "He was very nervous, stopped and looked both ways, then walked very fast, when we got to

Main he had crossed, and he went down toward Klamath, right to the corner of Schuss' Beer Parlor and I made another remark. About that time he jackknifed across the street and came up on the other side by Polin's. He had let me out of the car, DeLos stopped and I got out, I was about 20 feet from the corner and I immediately went to the corner and looked down the street, there was no man on the street and I went in Louie Polin's store and about 50 feet back from the front door there's a door always locked and this man was trying to work the latch. I stood and looked at him and he turned and saw me. He started to jackknife across, there's two entrances, and I hollered at him, I didn't want him to get away." This was about 6:00 P. M.

The defendant was a stranger in Klamath Falls, his home being in Portland. After some conversation with him, which need not be detailed, Judge Vandenberg persuaded the defendant to go with him to the police station to be identified. Cecile was brought there and identified the defendant as the man whom she had described to her father. The defendant at first protested that she had never seen him before, but Cecile insisted that he was the man, and Judge Vandenberg called the defendant a "dirty son of a bitch" and directed him to be "booked", which was done by a police sergeant. A few minutes after this the defendant, in the office of the chief of police, admitted the offense to Judge Vandenberg and said "Let's settle this case, how much will it cost?", whereupon Judge Vandenberg, according to his testimony, said, "Sit down, you son of a bitch, or I'll spread your God damned teeth all over the floor". He grabbed the defendant and shoved him back in his chair from which he had arisen. He denied that he used his fists, but

admitted that he said "You dirty bastard, there's only one way to settle this, and that's to beat you to death." A similar incident occurred a few minutes later when, according to the testimony of Judge Vandenberg and others, the defendant again proposed to buy himself out of his predicament. Judge Vandenberg started after the defendant, who raised his foot as though to kick him. Judge Vandenberg grabbed the defendant's foot, but Mills interferred, parted the two men, and induced Judge Vandenberg to stay away from the defendant. There was nothing further in the way of physical force or threats. Clarence A. Humble, the district attorney, who was among those present, told the defendant to sit down, and, according to Mills' recollection, told Judge Vandenberg to leave the room. About this time Orville Hamilton, the chief of police, arrived and led Judge Vandenberg out of the room, to which he did not thereafter return.

The district attorney arrived at the office of the chief of police between 6:45 and 7:00 P. M. There were then present in the room, besides the defendant and Judge Vandenberg, City Policeman R. E. Switzer and DeLos Mills. Before the foot-grabbing incident, the defendant admitted to Humble his connection with the crime. After Judge Vandenberg left the room Humble and Mills had a talk with the defendant which lasted a half hour or more and in which the defendant at first attempted to excuse himself by claiming that what had occurred during his encounter with Cecile was accidental, but, finally, again admitted that it was an intentional act and expressed his willingness to repeat his statement before a shorthand reporter. Humble left the room to phone for A. L. Brandt, the court reporter, and was gone about twenty minutes. Brandt

arrived about 8:00 or 8:30 P. M. The chief of police had returned in the meantime, and, in the presence of the chief, Mills and Brandt, Humble interrogated the defendant while Brandt took down the questions and answers in shorthand. We refrain from printing the statement because of its unsavory character. It is sufficient to say that it constitutes a full and detailed confession of the crime as alleged in the indictment. The reporter's notes were not transcribed for the defendant's signature, and Mr. Brandt testified from his notes to the contents of the statement.

The defendant, who testified only at the preliminary hearing upon the admissibility of the confession, out of the presence of the jury, swore that after Cecile Vandenberg identified him Judge Vandenberg said to him, "What did you do to that girl?", called him various obscene and abusive names, struck him twenty or thirty times, and threatened to kill him repeatedly, saying, "If I had my gun I'd kill you." (Judge Vandenberg denied that he made any reference to a gun.) The threats and blows, according to the testimony of the defendant, filled him with fear and terror that he would be killed or mutilated, so that he finally said, "If you will take his hands off me I will talk." Judge Vandenberg, he testified, then quit his assaults and left the room and was not there when the statement was taken by the reporter, but the defendant remained in fear that he would return with a gun. He denied that he at any time made any kind of a proposition to Judge Vandenberg. The defendant further testified that during his maltreatment by Judge Vandenberg two officers were in the room, one at one time and another at another, that Mills was there and Humble most of the time; that the officers

were armed and made no efforts to stop the assaults. He swore that Mr. Humble repeatedly said to him, "You'd better admit it or he will kill you."

Humble denied this, and swore that he made no threats and no promises; that he informed the defendant that he would make such use of the statement as he saw fit, and advised him to tell the truth and unless he told the truth not to tell anything. He further testified with reference to Judge Vandenberg's actions: "As long as the man wasn't propositioning him, the Judge would stay away, but when the man would say something about settling, that burned the Judge up."

The defendant produced as a witness Dr. W. H. Bueermann, of Portland, who testified that he examined the defendant on May 17, 1947, six days after the occurrences above related, and found a number of large bruises on various parts of his body. The physician was of the opinion that these bruises were caused by a blunt object and could have resulted from blows received approximately within a week or ten days prior to the time of the examination. Mrs. Nagel, the wife of the defendant, also testified to bruises on the defendant's body on the morning of Friday, May 15, after he returned to Portland, and there were other witnesses to the existence of such bruises after May 15.

Justice of the Peace Joe Mahoney and his court clerk, Frances Deetz, both testified that when the defendant was arraigned on May 13 he said that he had been treated with every respect and consideration by Mr. Humble. J. E. Green, county jailer, testified that when the defendant was received in the jail on the evening of May 11 his appearance was neat, his hair

was not mussed, and that, during the time defendant was in jail, from the evening of May 11 to May 15, he saw him several times when he was disrobed to the waist—the weather being warm—and observed no bruises, marks or abrasions on him. All the witnesses for the state who saw the defendant during the time that he was in the office of the chief of police testified to his neat and orderly appearance, that his glasses were on and unbroken, and his hair, as the witness Switzer put it, "slicked down".

The court, while admitting in evidence the confession to the district attorney which was taken down by the court reporter, and prior admissions made in the presence of the district attorney and DeLos Mills, excluded the confession or statement amounting to acknowledgment of guilt first made to Judge Vandenberg, on the ground that it was not voluntary. From this ruling, which is said to be founded upon the court's view that the statement was made under the influence of fear induced by threats, the defendant argues that the formal confession to the district attorney should likewise have been excluded, on the principle that once a confession made under improper influences is obtained the presumption arises that a subsequent confession of the same crime flows from the same influences even though made to a different person than the one to whom the first was made. 20 Am. Jur., Evidence, 424, § 487.

■■■ The rules governing the admission of confessions are well settled and need to be only briefly stated. No purported confession is admissible unless voluntarily made, and the state has the burden of proving that it was voluntary. *State v. Jordan,* 146 Or. 504, 510, 542, 26 P. (2d) 558, 30 P. (2d) 751. By statute a con-

fession cannot be given in evidence against a defendant "when made under the influence of fear produced by threats". § 26-937, O. C. L. A. The court's findings upon the preliminary issue of the admissibility of a confession where the evidence is conflicting will not be disturbed on appeal unless the record discloses manifest error or abuse of judicial discretion. *State v. Linn,* 179 Or. 499, 173 P. (2d) 305; *State v. Jordan,* supra, 146 Or. 511.

The evidence for the state in this case shows that the first confession, or, what is the same thing, the defendant's statement to Judge Vandenberg amounting to a confession, was made by the defendant before he was either threatened or assaulted, albeit after he was subjected to verbal abuse. We think that evidence of this statement might well have been admitted, but, treating the case as though the statement was induced by fear, we find no reason for holding that the trial judge erred or abused his discretion in admitting the subsequent incriminatory statements and the formal confession. For the most reasonable view of the evidence, in our opinion, and certainly the view that the trial judge was entitled to hold, is that Judge Vandenberg's conduct towards the defendant, which the latter claimed in his testimony put him in fear of his life, had nothing to do with an attempt to extort a confession from him, and did not produce that effect on the defendant's mind, but rather that it was provoked by the defendant's overtures to Judge Vandenberg looking toward a financial settlement of his difficulty. All the evidence except that of the defendant himself tends to support this conclusion, and there is one piece of testimony which leaves little doubt about it. It will be recalled that after Judge Vandenberg

left the office of the chief of police, Mr. Humble, the district attorney, and Mr. Mills remained with the defendant talking with him, and that after about half an hour Humble left to phone the court reporter. During his absence of about twenty minutes, while Mills was alone with the defendant, according to Mills' testimony, which is uncontradicted, "the defendant asked me if I would go and get the man so that he could have an opportunity to talk this thing over and make some settlement". The man referred to was, of course, Judge Vandenberg, and it is wholly unreasonable to suppose that the defendant would have asked for another interview with Judge Vandenberg had he been in mortal terror of him.

The facts make applicable the following statement from a decision cited by the defendant, *State v. Miller,* 68 Wash. 239, 243, 122 P. 1066:

" * * * In a few cases, it has been held that proof of the later voluntary admission cured error in admitting evidence of the first confession. But in most of these cases the second confession was made to other persons, and when the custody and control of the person extorting or inducing the first confession was wholly removed."

■ The final assignments of error are based upon denial of the defendant's motion for a directed verdict. The ground of the motion was that the evidence did not establish the crime charged. There is no merit in the assignment. The confession establishes every element of the crime, and the testimony of Cecile Vandenberg corroborates the confession.

Defendant was accorded an eminently fair trial. His rights were protected at every stage, not only by the skilful defense made by his attorneys, but by

the presiding judge as well. The judge was particularly careful to exclude from the jury every one who expressed any doubt as to his impartiality, and, it should be added, the district attorney made no effort to have such jurors retained. As a result jurors were excused who might have qualified had they been questioned upon their ability to disregard their opinions and try the case impartially. See § 5-208, O. C. L. A.; *State v. Brumfield,* 104 Or. 506, 209 P. 120. There is nothing to indicate that the jury based their verdict on anything except the evidence, and the evidence amply justified their verdict.

We find no error in the record, and the judgment is, therefore, affirmed.

Hay, J., feeling himself disqualified, took no part in the consideration or decision of this case.